2019 PA Super 280

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.M.-M., MOTHER | : | No. 260 EDA 2019 |

Appeal from the Order Entered December 27, 2018
in the Court of Common Pleas of Montgomery County
Juvenile Division at No(s): 176-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.M.-M., MOTHER | : | No. 262 EDA 2019 |

Appeal from the Order Entered December 27, 2018
in the Court of Common Pleas of Montgomery County
Juvenile Division at No(s): 177-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.M.-M., MOTHER | : | No. 264 EDA 2019 |

Appeal from the Order Entered December 27, 2018
in the Court of Common Pleas of Montgomery County
Juvenile Division at No(s): 178-2017

J-A13041-19

BEFORE:   SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:                    **FILED SEPTEMBER 13, 2019**

L.M.-M. (Mother) appeals from the December 27, 2018 orders the juvenile court entered in the dependency matters of Mother's minor children: J.M., A.M., and D.M. (collectively, Children; born in July 2003, April 2002, and February 2001, respectively).[1]  Mother's counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Because the December 27, 2018 orders are not appealable orders, we quash Mother's appeals and deny counsel's petition as moot.

## I. Procedural History

We provide an overview of the procedural history only, as the substantive factual history is not relevant to our determination.  On June 20, 2017, Children were adjudicated dependent pursuant to 42 Pa.C.S. § 6302(1) and (6) of the Juvenile Act.  Initially, Mother retained legal and physical custody of Children.  On December 13, 2017, the juvenile court removed Children from Mother's care and transferred legal and physical custody to the Montgomery County Office of Children and Youth (the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The same order was entered in each of Children's dependency matters. Mother properly filed separate notices of appeal, **see Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (discussing Pa.R.A.P. 341, Official Note), and this Court subsequently consolidated the appeals.

- 2 -

Agency).[2]   The juvenile court set Children's permanency goal as reunification.   In furtherance of that goal, the juvenile court permitted Mother to visit with Children at their placements and occasionally at her home.

On December 27, 2018, the case was scheduled for a permanency review hearing before the juvenile court.   There were also two pending motions: one filed by the Agency to modify J.M.'s placement from Bethany Children's Home Residential Program to George Junior Republic and two filed by Mother, which sought return of Children and a home pass during Children's holiday break.   Because there was not sufficient time to hear all of the Agency's evidence, the juvenile court continued the hearing to another date.   The parties agreed that in the meantime, Children could visit Mother in her home for several days around the New Year holiday, provided that Mother and Children all submitted to a drug screen and tested negative for any illegal substances.   N.T., 12/27/2018, at 2-4 (description of agreement by the Agency's solicitor, followed by assent to agreement by Children's guardian *ad litem*, Children's legal counsel, and Mother's counsel).

After an off-the-record sidebar discussion, the juvenile court announced that Mother and two Children tested positive for THC. *Id.* at 5.

---

[2] Originally, Children were placed together in Bethany Children's Home Residential Program.  In late 2018, A.M. moved to an Impact Project foster home, and later to a respite foster home, where she remained at the time of the hearing at issue.

The juvenile court ruled that home passes would only be permitted if all four screens were negative. *Id.* at 5. The juvenile court judge then informed the parties that "the home visit issue can be revisited, but I need to see clean urines. … I'm not shutting it down. I want the family to hear me on that, but we need to meet each other, a meeting of the minds with clear heads." *Id.* at 7. The juvenile court continued the permanency review hearing for approximately one month to January 23, 2019. *Id.* Following the hearing, the juvenile court entered a written order prohibiting visits at Mother's home if Mother or Children tested positive for drugs. Order, 12/27/2018, at 1 ("The [juvenile court] will not grant home passes if any child or parent tests positive for drugs.").

It is from this order that Mother appeals. Both Mother and the juvenile court complied with Pa.R.A.P. 1925. In this Court, Appellant's counsel filed both an *Anders* brief and a petition to withdraw as counsel. In the *Anders* brief, the issue of arguable merit set forth by counsel is whether the juvenile court abused its discretion by conditioning home passes for Children on a negative drug screen by Appellant. *Anders* Brief at 6.

## II. Appealability of Order

Before we may address counsel's petition to withdraw and any substantive issues, we must determine whether the orders from which Mother appealed are appealable, because appealability implicates our

jurisdiction.[3] ***In Interest of N.M.***, 186 A.3d 998, 1006 (Pa. Super. 2018) (quoting ***Kulp v. Hrivnak***, 765 A.2d 796, 798 (Pa. Super. 2000) ("[Since we] lack jurisdiction over an unappealable order, it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.")). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." ***Barak v. Karolizki***, 196 A.3d 208, 215 (Pa. Super. 2018) (citation omitted).

In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12;[4] or (3) a collateral order, Pa.R.A.P. 313.

## A. Appealability Pursuant to Final Order Doctrine

We begin our analysis with the first category: final orders. "Pennsylvania's Rules of Appellate Procedure place great importance on the concept of 'final orders' to establish jurisdiction to hear an appeal." ***Commonwealth v. Culsoir***, 209 A.3d 433, 435 (Pa. Super. 2019). The

---

[3] This Court directed Mother to show cause as to why this Court should not quash her appeals on that basis. *Per Curiam* Order, 3/20/2019, at 1. Mother's counsel timely responded, noting his conclusion in the ***Anders*** brief that the appeals are frivolous and opining that the orders are not final, appealable orders. Letter from Counsel, 3/22/2019, at 1. Because counsel is seeking to withdraw pursuant to ***Anders***, we do not view counsel's statement as a concession on Mother's behalf.

[4] We need not examine the second category, as Mother did not seek permission to appeal the December 27, 2018 orders, nor are they orders appealable as of right by law.

purpose of the rule regarding final orders is to avoid "piecemeal appeals" and "protracted litigation." ***Commonwealth v. Bowers***, 185 A.3d 358, 362 (Pa. Super. 2018). It "maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency." ***Shearer v. Hafer***, 177 A.3d 850, 855-56 (Pa. 2018). It also represents a determination that "the cost of a wrong decision by a trial judge is typically outweighed by either the benefit of uninterrupted trial proceedings or the assurance that the issue is adequately reviewable through alternatives to an immediate appeal." ***Id.*** (citing Michael E. Harriss, ***Rebutting the Roberts Court: Reinventing the Collateral Order Doctrine Through Judicial Decision-Making***, 91 Wash. U. L. Rev. 721, 725 (2014)).

Generally, a final order is any order that disposes of all claims and all parties. Pa.R.A.P. 341(b). Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, ***see*** 42 Pa.C.S. § 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order. ***In Interest of C.A.M.***, 399 A.2d 786 (Pa. Super. 1979).

Unlike other types of cases, dependency matters do not end following a child's disposition. ***See In re Tameka M.***, 534 A.2d 782, 784 (Pa. Super. 1987) (*en banc*) (discussing unique ongoing nature of dependency matters),

*aff'd*, 580 A.2d 750, 752 (Pa. 1990) (approving of the Superior Court's recognition of the juvenile court's "continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.[] § 6351"). The juvenile court is statutorily required to review the case periodically[5] and issue orders relating to a variety of issues.[6] 42 Pa.C.S. § 6351(e)(3), (f)-(g). The purpose of the periodic review hearings is to "determin[e] or review[] the permanency plan of the child, the date by which the goal of permanency for the child might be

_____

[5] At a minimum, the juvenile court must conduct a permanency review hearing every six months. 42 Pa.C.S. § 6351(e)(3). In some cases, hearings are held every three months in accordance with best practice. **See** Pa.R.J.C.P. 1608, Comment.

[6] In general, the "[j]uvenile [c]ourt has the duty to act to provide for the 'protection and physical, mental and moral welfare' of a dependent child." **Tameka M.**, 580 A.2d at 755 (quoting 42 Pa.C.S. § 6351(a)). To that end, the Juvenile Act specifies 16 issues to be reviewed at each permanency review hearing. **See** 42 Pa.C.S. § 6351(f), (f.1). Such issues include matters relating to the child's placement; the child's permanency plan; the family's progress in alleviating the circumstances that brought the child into care; the child's placement goal; the timeframe to achieve the goal; the agency's reasonable efforts; the child's safety; services needed to transition the child to adulthood; whether the agency should file a petition to terminate parental rights; placement and visitation with the child's sibling; and opportunities for the child to participate in appropriate activities. 42 Pa.C.S. § 6351(f)(1)-(12). Additionally, the juvenile court must determine at every permanency hearing if and when the child should be returned, placed for adoption, placed with a legal custodian or fit and willing relative, or placed in another planned permanent living arrangement. 42 Pa.C.S. § 6351(f.1). Finally, the court must receive and evaluate any evidence of conduct by the parent that places the health, safety, or welfare of the child at risk, including evidence of the use of alcohol or controlled substance, whether or not the conduct was the basis for the determination of dependency. 42 Pa.C.S. § 6351(f.2). Based on the foregoing, the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child. 42 Pa.C.S. § 6351(g).

achieved[,] and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(e)(1). In many cases, it may be months or years after the dependency disposition before the Juvenile Court has occasion to enter an order that truly disposes of all claims and all parties, such as by return to parents and the cessation of dependency, termination of parental rights and adoption of the child, transfer of custody to family or kin, or a child's aging out of the system.

Therefore, due to dependency's unique nature, the fact that further proceedings are contemplated is not dispositive of the finality of the order. *In the Interest of J.L.*, __ A.3d __, 2019 WL 3295100, at 3 n.1 (Pa. Super. 2019). In the dependency context, the court "must examine the practical consequences of the order to determine if the party challenging it has effectively been put out of court." *In re Interest of M.B.*, 565 A.2d 804, 806 (Pa. Super. 1989). Thus, "this court acknowledges certain crucial points of finality when review is appropriate despite the fact that such determinations may later be modified by the trial court after further statutorily[-]mandated review hearings are held." *Id.* at 808. Specifically, our Supreme Court has held that an "order granting or denying a status change, as well as an order terminating or preserving parental rights,[7] shall

---

[7] An order terminating or preserving parental rights is entered pursuant to the Adoption Act, a separate but related statute to the Juvenile Act.

be deemed final when entered." *In re H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003). This helps ensure that orders that improperly prolong the *status quo* and harm children's needs and welfare are not shielded from independent review permanently. *Id.*

The orders at issue in *H.S.W.C.-B.* denied a child welfare agency's petitions to terminate parental rights and to change the permanency goal to adoption. This Court had quashed the agency's appeal because the order denying the petitions maintained the *status quo*. The Supreme Court rejected the holding of our Court, reasoning that "[m]aintaining the *status quo* could put the needs and welfare of a child at risk" because if the same trial judge repeatedly and erroneously denies requests to change the permanency goal, the "improper order" would always be shielded from appellate review. *Id.* at 910-11. The Court further reasoned that

> [a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered. Pa.R.C.P. 1915.10. Such an order may be modified at any time, provided the modification is in the best interest of the child. *See* 23 Pa.C.S. § 5310; *Karis v. Karis*, [] 544 A.2d 1328, 1331–32 ([Pa.] 1988). If denial of a custody modification petition is final when entered, the denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well. … We now adopt the recent pronouncement in *In re A.L.D.*, [797 A.2d 326 (Pa. Super. 2002)], where the Superior Court declared all orders in termination matters final. An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered. *See id.*

*Id.* at 911.

In *In re J.S.C.*, 851 A.2d 189 (Pa. Super. 2004), this Court considered the impact of *H.S.W.C.-B.* upon an appeal by a child welfare agency from a dependency order granting a parent visitation. In that case, we stated

> that our Supreme Court's admonition in *H.S.W.C.-B.* [] that "[a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered" referred solely to orders entered pursuant to the Adoption Act, 23 Pa.C.S.[] § 2501, *et. seq.*, and is not controlling in our analysis of the finality of visitation orders entered following adjudication under the Juvenile Act, 42 Pa.C.S. § 6, *et. seq.*

*J.S.C.*, 851 A.2d at 191. Ultimately, our court determined that *H.S.W.C.-B.*'s holding did not extend to a case where a "children and youth agency appeals from an order granting visitation to the parent of a dependent child" and held that the order in question was not a final order pursuant to Pa.R.A.P. 341. *Id.*

The *J.S.C.* panel's interpretation of our Supreme Court's statement in *H.S.W.C.-B.* as referring to orders solely entered pursuant to the Adoption Act is perplexing. *H.S.W.C.-B.* plainly involved orders entered pursuant to the Adoption Act **and** Juvenile Act. *See H.S.W.C.-B.*, 836 A.2d at 909 ("CYS filed petitions to change the goal from reunification to adoption, and to involuntarily terminate Mother's parental rights."); *In re R.J.T.*, 9 A.3d 1179, 1182 n.6 (Pa. 2010) (explaining that a "goal change" is a term of art referencing the juvenile court's decision to continue or change the permanency plan goal and/or order to continue, modify, or terminate the current placement pursuant to 42 Pa.C.S. § 6351(g) of the Juvenile Act); *In*

*re A.L.D.*, 797 A.2d 326, 339-40 (Pa. Super. 2002) (noting that jurisdiction of orphans' court to terminate parental rights is derived from Adoption Act and juvenile court's jurisdiction to change the permanency goal is derived from Juvenile Act); *In re Adoption of S.E.G.*, 901 A.2d 1017, 1026 (Pa. 2006) (observing that since the legislature permits a juvenile court judge to be assigned to orphans' court division to conduct a termination of parental rights proceeding pursuant to 42 Pa.C.S. § 6351(i), in practice one judge often hears the goal change and termination of parental rights proceeding). Nevertheless, *J.S.C.* expressly limited its holding to appeals by the agency, *see J.S.C.*, 851 A.2d at 191; so it is not dispositive of the instant appeal, which is an appeal by a parent from an order placing restrictions on visitation.

With *J.S.C.* of limited assistance to our current examination, we return to our Supreme Court's analysis in *H.S.W.C.-B.* Although our Supreme Court's statement regarding the finality of visitation orders is broad and sweeping, in context, we think that the Court merely was referring to visitation orders entered under the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, as a point of comparison.

We arrive at this conclusion from the following analysis. In support of its statement that all custody and visitation orders are final upon entry, the Court cited to Pa.R.Civ.P. 1915.10. *H.S.W.C.-B.*, 836 A.2d at 911. Rule 1915.10 is contained in the rules that govern custody actions, *see*

Pa.R.Civ.P. 1915.1, as opposed to the rules of juvenile procedure, which govern dependency actions, *see* Pa.R.J.C.P. 1100(A). At the time **H.S.W.C.-B.** was decided, Rule 1915.10 provided, *inter alia*, that "[n]o motion for post-trial relief may be filed to an order of custody, partial custody[,] or visitation."[8] **See id**. The Court then referenced a statute and case in the custody context providing that as long as the court had jurisdiction, it could modify a custody order at any time. **H.S.W.C.-B.**, 836 A.2d at 911 (citing in support 23 Pa.C.S. § 5310, which was later repealed, and **Karis v. Karis**, 544 A.2d 1328 (Pa. 1988)).

When examined closely, the Supreme Court's discussion indicates that instead of making a new sweeping pronouncement with its statement that **all** orders dealing with custody and visitation orders are final when entered, the Court appeared simply to be making a correlation between custody actions pursuant to the Child Custody Act, dependency actions pursuant to the Juvenile Act, and termination of parental rights matters pursuant to the Adoption Act. Indeed, immediately after citing law relating to custody

---

[8] The full text of the rule was as follows.

> **Rule 1915.10. Decision. Order**
>
> > (a) The court may make the decision before the testimony has been transcribed.
> >
> > (b) No motion for post-trial relief may be filed to an order of custody, partial custody[,] or visitation.

**See** 43 Pa.B. 4702 (August 17, 2013).

actions pursuant to the Child Custody Act, the *H.S.W.C.-B.* Court stated, "[i]f [a] denial of a custody modification petition is final when entered, the denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well." *H.S.W.C.-B.*, 836 A.2d at 911.

This is further bolstered by its mention of *A.L.D.* *See H.S.W.C.-B.*, 836 A.3d at 911 ("We now adopt the recent pronouncement in [*A.L.D.*], where the Superior Court declared all orders in termination matters final."). In *A.L.D.*, this Court discussed the then-recent amendment to Rule 7.1 of the Orphans' Court Rules, which eliminated the fling of exceptions in involuntary termination or adoption matters under the Adoption Act. This Court noted that the appeals at hand were "properly before us without the filing of exceptions, as all decrees in termination of parental rights cases are now considered final, appealable orders." *Id.* at 335.

By referencing Pa.R.Civ.P. 1915.10 and *A.L.D.*, it seems that the *H.S.W.C.-B.* Court's holding regarding the finality of certain orders maintaining the *status quo* in dependency and termination of parental rights matters was influenced by the notion that post-trial motions are not permitted in custody actions and termination of parental rights matters. Furthermore, the fact that courts can modify prior final custody orders in domestic relations matters at any time if it serves the child's best interest, seems to have further persuaded the *H.S.W.C.-B.* Court to permit orders

that deny a goal change request or a petition to terminate parental rights to be appealed.

Furthermore, all permanency review orders broadly deal with custody and visitation. *See* 42 Pa.C.S. § 6351(e)-(f). If the **H.S.W.C.-B.** Court intended to make a sweeping pronouncement regarding the finality of all orders dealing with custody or visitation in all contexts, it could have simply held that all orders entered pursuant to the Juvenile Act are appealable, not only ones that grant or deny a status change.[9]

We conclude from the foregoing analysis that the statement in **H.S.W.C.-B.** regarding the finality of "orders dealing with … visitation" was a

---

[9] Even if we are mistaken and our Supreme Court intended to make a prospective pronouncement as opposed to a mere observation, we would conclude that its statement regarding the finality of visitation orders is non-binding *dictum*. The precise holding of **H.S.W.C.-B.** is "that denials of goal change petitions, as well as grants of such petitions, are final and appealable." **In re Adoption of S.E.G.**, 901 A.2d 1017, 1026 (Pa. 2006). Therefore, the Supreme Court's statement in **H.S.W.C.-B.** regarding the finality of visitation orders does not bind our analysis.

Furthermore, although this Court has repeated the statement from **H.S.W.C-B.** several times, *see, e.g., N.M.*, 186 A.3d at 1006 (citing **H.S.W.C.-B.** for the proposition that all orders dealing with visitation or custody, with the exception of enforcement or contempt proceedings, are final when entered), none of these cases involved the task at hand here, *i.e.*, deciding whether an appeal by a parent from an order restricting visitation is appealable as a final order. Thus, while we always accord great respect and consideration to statements made by our Supreme Court and fellow colleagues, we do not view the statement as controlling in the instant case. **See Commonwealth v. Romero**, 183 A.3d 364, 400 n.18 (Pa. 2018) (plurality) ("[M]ere repetition of *dicta* in later decisions, where it does not control the disposition of a litigated issue, does not transform that *dicta* into controlling law.").

mere observation and interpretation of existing law pursuant to the Child Custody Act, not a binding prospective holding regarding orders dealing with visitation pursuant to the Juvenile Act. The orders at issue in the instant appeal are orders continuing a permanency review hearing and placing location restrictions on Mother's visits with Children until all were drug-free. This is not a "status change" within the meaning of **H.S.W.C.-B.** It also does not dispose of all parties or issues in the dependency matter. Considering that the juvenile court expressly informed the parties that it would revisit the issue of home passes and the permanency review hearing was continued for one month, the practical consequences of the orders do not put Mother out of court in effect. **See M.B.**, 565 A.2d at 806. Therefore, we conclude that the orders appealed from are not final orders for purposes of Pa.R.A.P. 341.

## B. Appealability Pursuant to Collateral Order Doctrine

As an interlocutory order, we next consider whether the order could constitute a collateral order. We have explained the doctrine as follows.

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. **See** Pa.R.A.P. 313.
>
> Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final

orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

*In re W.H.*, 25 A.3d 330, 335 (Pa. Super. 2011) (some citations omitted).

As our Supreme Court recently has explained,

"[w]e construe the collateral order doctrine narrowly so as to avoid 'undue corrosion of the final order rule,' ... and to prevent delay resulting from 'piecemeal review of trial court decisions.'" *K.C. v. L.A.*, [] 128 A.3d 774, 778 ([Pa.] 2015) (quoting *Pridgen v. Parker Hannifin Corp.*, [] 905 A.2d 422, 427 ([Pa.] 2006)). As colorfully explained by then-Justice, later Chief Justice, Henry X. O'Brien, "[i]t is more important to prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." *Calabrese v. Collier Township Municipal Authority*, [] 248 A.2d 236, 238 ([Pa.] 1968) (O'Brien, J., dissenting). Moreover, as parties may seek allowance of appeal from an interlocutory order by permission, we have concluded that that discretionary process would be undermined by an overly permissive interpretation of Rule 313. *Geniviva* [*v. Frisk*], 725 A.2d [1209,] 1214 n.5 [(Pa. 1999)].

*Shearer*, 177 A.3d at 858. *See also Hession Condemnation Case*, 242 A.2d 432, 437 (Pa. 1968) (O'Brien, J., dissenting) (commenting regarding statute permitting immediate appeal of interlocutory order: "The bifurcated appeal foisted upon the courts can only be termed a judicial Hydra. Would that a Hercules could appear ... to slay this monster.").

Regarding the first prong, "an order is separable from the main cause of action if it is 'entirely distinct from the underlying issue in the case' and if 'it can be resolved without an analysis of the merits of the underlying

dispute.'"[10] **K.C.**, 128 A.3d at 778 (citing **Commonwealth v. Blystone**, 119 A.3d 306, 312 (Pa. 2015)); **see also Cohen v. Beneficial Indus. Loan Corp.**, 337 U.S. 541, 546-47 (1949) ("We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it."); **Barak v. Karolizki**, 196 A.3d 208, 218 (Pa. Super. 2018) (citing **Ben v. Schwartz**, 729 A.2d 547, 552 (Pa. 1999) ("The element of separability requires that the merits of the appeal must be resolvable 'without analysis of' the substantive claims in the underlying lawsuit."). "Although [appellate courts] tolerate a degree of interrelatedness between merits issues and the question sought to be raised in the interlocutory appeal, the claim must nevertheless be conceptually distinct from the merits of plaintiff's claim." **Blystone**, 119 A.3d at 312 (citation and quotation marks omitted).

One of the complications with the collateral order doctrine as applied to dependency matters is what precisely constitutes the main cause of

_____

[10] Two classic examples of separable issues include standing and discovery. **See, e.g., K.C.**, 128 A.3d at 778 ("As the issue of whether [the a]ppellants are among the individuals who have standing to seek custody … is a conceptually distinct legal question which has no bearing on the central issue within the custody action - who is entitled to physical and legal custody of [the c]hild in light of her best interests - we find that the [a]ppellants have established that the trial court's order is separable from the main cause of action."); **Shearer**, 177 A.3d at 858 ("The discovery-based issue of whether a plaintiff in a civil personal injury action has the right to counsel or other representative during a neuropsychological examination is a distinct legal question which has no bearing on the underlying issues in this negligence action.").

action. This Court has not been consistent with that determination. In *Tameka M.*, which is a child welfare agency's appeal from an order mandating that the agency reimburse the foster parents of a dependent child for preschool tuition, an *en banc* panel of this Court offered a narrow interpretation of the main cause of action. After reviewing the purposes behind the Juvenile Act, this Court concluded that "the main cause of action consists of a dependency determination and disposition," a conclusion this Court believed was reinforced by the fact it is the dispositional order that constitutes a final, appealable order. *Tameka M.*, 534 A.2d at 786. The Court also emphasized the distance between the two orders. *Id.* ("[T]he order of disposition was entered in March of 1983[,] and it was not until August of 1984 that the present order was entered. We find that the order directing payment of the preschool funds is clearly separable from and collateral to the order of disposition[.]"). *See also In re N.E.*, 787 A.2d 1040, 1041 (Pa. Super. 2001) (relying on *Tameka M.* to determine that an appeal by child welfare agency of order requiring agency to pay a portion of child's dental bills was a collateral order); *In re J.R.*, 875 A.2d 1111, 1114 (Pa. Super. 2005) (holding that an order requiring child welfare agency to pay for telephone service for a parent "is separable from and collateral to the main cause of action, which is the dependency determination and disposition.").

In other cases, however, this Court has viewed the "cause of action" to be somewhat broader. In *In re J.S.*, the child had been adjudicated dependent for over three years. The initial permanency goal in 2005 was reunification, but the goal changed in 2006 to adoption and then to subsidized permanent legal custodianship (SPLC) in 2008. After the last goal change to SPLC, the child's foster parents attempted to intervene in the ongoing dependency proceedings. This Court determined that the issue of standing was "separable from the central issue during the **current stage** of the dependency proceedings, facilitating permanency."[11] *In re J.S.*, 980 A.2d 117, 121 (Pa. Super. 2009) (emphasis added). This Court noted that standing was a "distinctly legal question that does not address the merits of the adjudication or the propriety of the permanency goal" and was "peripheral to the substantive decisions affecting the child's best interests, which is the polestar of all dependency proceedings." *Id. See also In re W.H.*, 25 A.3d 330, 335 (Pa. Super. 2011) ("The order fulfills the first prong because the issue of [the child's] mental health treatment is separable from and collateral to the principal issue during the dependency proceedings, facilitating permanency.").

---

[11] At risk of stating the obvious, the concept of permanency means not leaving a child in foster care "limbo" and instead ensuring the child lives in a "permanent, safe, stable, and loving home[]," whether with the child's family or an "alternative permanent family." *In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013); 42 Pa.C.S. § 6301(b)(1).

In other cases, it seems this Court has taken an even more expansive view of what constitutes the main cause of action, implying that the underlying cause of action is the permanency hearing at issue. *See In re T.R.*, 665 A.2d 1260, 1263 (Pa. Super. 1995) (holding that juvenile court's order of psychological evaluation of parent of dependent child and release of such report to interested parties "is separable and collateral to the main cause of action, namely the disposition of T.R."), *rev'd on other grounds*, 731 A.2d 1276 (Pa. 1999) (plurality) (agreeing that the order was collateral to disposition).[12]

More recently, in *N.M.*, the parents appealed from an order following a permanency review hearing that occurred almost eight months after then seven-month-old N.M. was removed from her parents based upon her unexplained rib fractures. At the permanency review hearing, although N.M.'s permanency goal remained reunification and N.M.'s parents had complied with their service plan objectives, the juvenile court refused to return N.M. because the parents still had not explained how N.M. had

---

[12] We acknowledge that in *T.R.*, this Court and our Supreme Court referred to the cause of action as the disposition, not the permanency hearing. In context, it appears that by using the term disposition, this Court at least was referring to the ongoing review of the child's disposition. *See T.R.*, 665 A.2d at 1260 n.4 (noting "this appeal arises solely from the trial court's collateral orders as to disposition and does not challenge the propriety of the underlying dependency adjudications. As such, our role here is limited to reviewing the trial court's actions in the context of the dispositional review hearing."); 42 Pa.C.S. § 6351 (including subsection (e) regarding permanency hearings in section regarding "[d]isposition of dependent child").

become injured. The parents requested that N.M.'s placement be changed from foster care to kinship care, but the juvenile court denied their request. When the parents appealed from the permanency review order, this Court considered whether the order was an appealable collateral order. This Court concluded it was not. Without elaboration, this Court determined that the permanency review order was not "separable from or collateral to the main cause of action where the only request was to change the placement of N.M. (from foster care to kinship care) and where the placement remained the same." **N.M.**, 186 A.3d at 1007-08.

When reviewing our treatment of dependency cases as a whole, it is apparent that this Court has not been consistent with its interpretation of "the main cause of action" for purposes of R.A.P. 313. Sometimes we have placed the emphasis on the underlying dependency adjudication and disposition, even if the case has progressed into the permanency review stage, **see Tameka M.**, **N.E.**, and **J.R.**, **supra**; other times we have focused on one of the broad goals in the particular stage of the case, **see J.S.** and **W.H.**, **supra**; and still other times we have looked to the purpose of the particular hearing, **see T.R.** and **N.M.**, **supra**.

The dependency adjudication and disposition certainly are the backbone of the cause of action, especially considering the juvenile court loses jurisdiction once the child at issue is no longer a child or no longer dependent. **See Brooks-Gall v. Gall**, 840 A.2d 993 (Pa. Super. 2003)

(holding juvenile court acquires jurisdiction by commencement of proceedings pursuant to 42 Pa.C.S. § 6321 of the Juvenile Act); ***In re S.J.-L.***, 828 A.2d 352 (Pa. Super. 2003) (affirming juvenile court's closure of dependency case for child who no longer met the definition of dependent).

Nevertheless, unlike other types of cases that are targeted towards resolving the initial cause of action (*i.e.*, is the defendant guilty of a crime, is the defendant liable, etc.), "[m]ost dependency actions, and especially those as prolonged as the one currently at issue, involve a variety of issues, parties and [o]rders of court." ***In re Griffin***, 690 A.2d 1192, 1200 (Pa. Super. 1997). This is because once a child is dependent, the juvenile court "maintains a continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.[] § 6351 … and has the power to review the circumstances of dependent juveniles and to question both the legal custodian, [the agency], and the foster parents concerning the condition and the needs of the dependent child." ***Tameka M.***, 580 A.2d at 752; ***In re J.A.***, 107 A.3d 799, 809-10 (Pa. Super. 2015) (noting that due to its ongoing plenary jurisdiction, "[t]he juvenile court is empowered to enter orders that are in the child's best interest consistent with the mandates of section 6351 of the Juvenile Act"); ***Griffin***, 690 A.2d at 1200 (describing "the statutory authority of the Juvenile Court to exercise continuing independent and original authority to adjudicate in the best interests of a dependent child").

Once a child is adjudicated dependent, the juvenile court is tasked with addressing many issues that relate to the best interest of the child but may have little to do with the original basis for adjudicating the child dependent. *See In re R.P.*, 956 A.2d 449, 454 (Pa. Super. 2008) (noting that the dependency adjudication and disposition hearings address issues different from the permanency review hearings); *compare* 42 Pa.C.S. § 6341 *with* 42 Pa.C.S. § 6351. For example, a child could be adjudicated dependent due to abuse or neglect by the child's parents, but down the line, if permanency is not achieved, the focus may shift more towards the child's well-being independent of the child's parents, such as issues relating to the child's education, healthcare, activities, transition to adulthood, and relationships with siblings, kin, peers, caregivers, and service providers – all of which the Juvenile Court must or may examine at each permanency review hearing. *See* 42 Pa.C.S. § 6351.

If the main cause of action is narrowly interpreted as the initial dependency adjudication and disposition, almost any subsequent issue addressed in a permanency review order would be separable from and collateral to the main cause of action, despite certain issues being statutorily-mandated.[13] Furthermore, even if the main cause of action is

_____

[13] In at least one case, however, this Court apparently determined that the fact that an issue was a statutory matter to be addressed by the Juvenile Court had no bearing on what constitutes the main cause of action. *See In re R.C.*, 945 A.2d 182, 184 (Pa. Super. 2008) (holding that an appeal from
*(Footnote Continued Next Page)*

- 23 -

interpreted as obtaining permanency for a child – whatever that may mean for the particular child in the current stage of the case – permanency is only one purpose of the Juvenile Act. *See* 42 Pa.C.S. § 6301(b)(1)-(4). To isolate the main cause of action as permanency does not pay credence to the other equally valid purposes of the Act, such as providing "for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter."[14] 42 Pa.C.S. § 6301(b)(1.1).

On the other hand, to go too far in the other direction by interpreting the main cause of action too broadly could render many interlocutory orders unreviewable under the collateral order doctrine, putting the onus on the aggrieved party to attempt to use Pa.R.A.P. 312 to appeal an interlocutory order by permission. As a practical matter, for court-appointed lawyers with high caseloads, who make up the bulk of the legal representation in dependency matters, this extra hurdle may often result in leaving the juvenile court's order unchallenged, especially because the family's

*(Footnote Continued)* _____

an order finding aggravated circumstances was "by definition … an appeal as of right from a collateral [o]rder," but without discussing the first prong of the test).

[14] Of course, a valid argument can be made that permanency ultimately dominates all other goals, for if a child finds permanency, the child will no longer be dependent and the caregiver will be the one to address the child's other needs, not the Commonwealth. But for some children, namely those with a permanency goal of Another Planned Permanent Living Arrangement (*i.e.*, those in long-term foster care, congregate care, or independent living arrangements), the other purposes of the Act are in the forefront.

circumstances will keep changing while the appeal proceeds. Some cases will only be reviewed at the time of the goal change and/or termination of parental rights stage, but by that time, the damage is often done.

In the context of dependency proceedings, there is much more at stake for the parties than their convenience. *C.f. Pugar v. Greco*, 394 A.2d 542, 546 (Pa. 1978) ("We have long held that, whenever possible, review must await the determination of a suit notwithstanding any resulting inconvenience to a party."). The bottom line is that due to the juvenile court's ongoing plenary jurisdiction, dependency proceedings are unique, and do not neatly fit into the typical nomenclature used to discuss the collateral order doctrine, which includes terms such as the "underlying issue," "merits of the underlying dispute," "ingredient of the cause of action," "substantive claims in the underlying lawsuit," and "merits of plaintiff's claim." *Cohen*, 337 U.S. at 546-47; *Ben*, 729 A.2d at 552; *K.C.*, 128 A.3d at 778; *Blystone*, 119 A.3d at 312; *Barak*, 196 A.3d at 218. To date, neither this Court nor our Supreme Court has addressed the inconsistencies in our caselaw or definitively held what constitutes the main cause of action within the meaning of Rule 313.

The issue at hand in the instant case, visitation, is a perfect example illustrating the quandary regarding what constitutes the main cause of action. If one views the cause of action as the underlying dependency adjudication and disposition, then visitation with a parent is separable from

the main cause of action. If one views the cause of action as the quest for the child's permanency, ensuring the child's best interests, or any of the statutorily-mandated determinations the juvenile court must make at each hearing, then visitation is quite intertwined.

In the lone case discussing appealability of an order relating to visitation, **J.S.C.**, which, as discussed *supra*, is a child welfare agency's appeal from an order mandating the agency to arrange visits between a dependent child and her incarcerated mother, this Court was not specific regarding what constitutes the underlying cause of action. **See J.S.C.**, 851 A.2d at 191 (opining that "an order abridging a parent's right to visitation with his or her child is separable and collateral to a dependency action because it does not require an analysis of the merits of the underlying case.").

Once again, we are perplexed by **J.S.C.**'s analysis. Visitation is intertwined with physical custody and also legal custody (to the extent that the legal custodian typically makes decisions about who can see the child). Deciding who should have custody is part of the initial and ongoing disposition of a child. **See** 42 Pa.C.S. § 6351(a). If a parent does not retain legal or physical custody, part of the consideration of whether and how the parent should have visitation is the amount of progress the parent has made towards rectifying the conditions that brought the child into care and whether the parent is engaging in conduct, including drug use, that places

the child's health, safety, or welfare at risk. **See** 42 Pa.C.S. § 6351(f)(3), (f.2). It is hard to see how visitation is separable from the underlying cause of action, no matter how narrow or wide one views the cause of action.

We believe **J.S.C.**'s pronouncement on the applicability of the collateral order test is *dicta*, and it is not controlling here. This Court's statement regarding whether a parent's right to visitation is separable from the underlying merits was made in the context of analyzing an earlier decision involving visitation, **In the Interest of Rhine**, 456 A.2d 608 (Pa. Super. 1983), a case in which this Court did not discuss the basis for exercising jurisdiction or whether the order at issue was appealable. The **J.S.C.** Court's ultimate holding rested upon the second prong of the collateral order test, importance of the right, not the first prong, seperability. **See J.S.C.**, 851 A.2d at 192 (holding that because the agency does not possess a right to prevent a parent from visiting a child, the appeal does not involve a right that is too important to be denied review).

As the foregoing analysis demonstrates, the first prong of the collateral order test is quite complicated as applied to dependency matters. We leave for another day the resolution of what constitutes the cause of action in a dependency matter, and whether a permanency review order placing restrictions on a parent's visitation is separable from the main cause of action, because the instant case is dispositive on the last two prongs of the collateral order test.

As noted above, the latter two prongs are importance of the right and irreparable loss. Pa.R.A.P. 313(b) (providing that "the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"). There is no question that a parent's "constitutionally protected liberty interest" in visiting her dependent children is an important right; this is reflected by the requirement that when the permanency goal remains reunification, visitation should not be denied or reduced unless it poses a "grave threat" to the children. *See In re C.J.*, 729 A.2d 89, 94 (Pa. Super. 1999). But the same cannot be said of a parent's right to visit with her dependent children in her home regardless of the parent's and/or children's sobriety. Because Children have been adjudicated dependent and Mother does not have custody of them, Mother does not possess an unfettered right to visit with Children under any conditions. *See In the Interest of T.D., Jr.*, 57 A.3d 650 (Pa. Super. 2012) (holding that juvenile court has discretion as part of its dispositional powers under the Juvenile Act to direct a parent to undergo a drug and alcohol evaluation before placing a delinquent child with the parent). Moreover, there is no indication in the record that Mother was denied the right to see Children in any fashion, or was denied the right to visit with Children in her home environment indefinitely. Accordingly, at this juncture, we conclude the right involved is not too important to be denied review.

Turning to the third prong, irreparable loss, we acknowledge that the four days over the New Years' holiday at issue cannot be recovered. But Mother's right to home visits in general have not been irreparably lost at this point. The juvenile court explicitly told the parties at the hearing that it would revisit the issue. N.T., 12/27/2018, at 7. The order itself did not deny home visits indefinitely; it simply required Mother and Children to be drug-free before visiting at Mother's home. Most significantly, the permanency review hearing was continued for one month, meaning that the juvenile court would have the opportunity to address the issue again after hearing all of the most-up-to-date evidence in the case.[15] Thus, we conclude that even if the first prong of the collateral order test could be met, the last two prongs are not met at the current time.

## C. Conclusion

If this case involved a juvenile court's repeated refusal to allow home visits, thereby impeding reunification, Children's well-being, and Children's opportunity to transition from congregate care to a family environment, our analysis might lead us to a different result. But a restriction on the location of visits that does not eliminate contact altogether and could be revisited in a month simply is not the type of order that constitutes an appealable final

---

[15] Although the record reveals neither the outcome nor whether this issue was revisited, it does indicate that another permanency review hearing was scheduled for January 23, 2019.

or collateral order.  Therefore, we quash Mother's appeal, and deny counsel's motion to withdraw as moot.[16]

Appeal quashed.  Motion to withdraw denied as moot.

Judge Shogan joins this opinion.

Judge Nichols concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/19

_____

[16] Because parents have a right to counsel at every stage of a dependency proceeding, this Court has held that the **Anders** procedure applies to appeals from goal change orders, even in the absence of an involuntary termination decree.  **In re J.D.H.**, 171 A.3d 903 (Pa. Super. 2017).  We see no reason why the same rationale would not apply to an appeal from a permanency review order that does not change the permanency goal.  We observe that in counsel's letter to Mother accompanying the **Anders** brief and motion to withdraw, counsel did not inform Mother that she has a right to counsel in any subsequent dependency or involuntary termination proceedings, and if she could not afford counsel, she must contact the trial court in order to obtain new counsel.  **See J.D.H.**, 171 A.3d at 906–07.  We further observe that although counsel referenced Mother's right to counsel in this appeal in his letter, the letter also implied "incorrectly that Mother would need to wait until this Court rules on his petition to withdraw before exercising those rights" instead of making it clear that she may proceed on her own or with newly-hired counsel immediately.  **Id.** at 907.  Nevertheless, since we do not have jurisdiction over this appeal, we simply deny counsel's motion to withdraw as moot.