J-S10002-21

2021 PA Super 88

| IN THE INT. OF: E.C., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.A.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1289 MDA 2020 |

Appeal from the Order Entered September 15, 2020
In the Court of Common Pleas of Northumberland County Juvenile
Division at No(s): CP-49-DP-0000088-2018

| IN THE INT. OF: L.C., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.A.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1290 MDA 2020 |

Appeal from the Order Entered September 15, 2020
In the Court of Common Pleas of Northumberland County
Juvenile Division at No(s): CP-49-DP-0000089-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

OPINION BY MURRAY, J.:                **FILED: MAY 6, 2021**

J.A.C. (Father) appeals from the September 15, 2020 permanency review orders which maintained the foster placement of his sons, E.C., born in September of 2017, and L.C., born in July of 2016 (collectively, the Children).  After careful review, we quash as interlocutory.

---

[*] Retired Senior Judge assigned to the Superior Court.

The Children were adjudicated dependent on August 3, 2018.[1] Northumberland County Children and Youth Services (CYS) initially placed the Children in kinship care. However, the first and second foster placements asked that the Children be removed due to their behaviors and/or special needs, and at the request of CYS, the court changed the Children's foster placements by orders dated August 24, 2018, September 13, 2018, and January 10, 2019.

Father and the Children's mother (Mother) have a history of domestic violence and drug and alcohol abuse. Juvenile Court Opinion, 11/25/20, at 1. For example, CYS substantiated reports Father "hit E.C. leaving scratches on his neck and had struck . . . L.C. with a hammer. Additionally, Father had taken a can of gasoline into the bedroom and Mother was consuming alcohol." *Id.* The court stated:

> Perhaps even more concerning was the referral that Father had threatened to beat Mother and the child over the head with a Playstation. When agency personnel discussed this with Father, he told them he was going to "break her f------ face", [and] "f---- beat the s--- out of her[.]" [Father also stated,] "diesel covers the evidence" and last, but not least, "wife needs smacked the f--- up."

*Id.* at 1-2.

---

[1] The Honorable Hugh A. Jones has presided throughout the dependency proceedings.

The court established reunification as the Children's permanency goal, with adoption as the concurrent goal. The court ordered, in part, that Father and Mother "enroll in and successfully complete the following parenting classes: Building Your Family, Active Parenting, SAFE ACT parenting, Discipline Strategies and Toddler Basics." Order of Adjudication and Disposition, 8/3/18, at 4, ¶ 8. The court further ordered Father to submit to random drug testing, and both Father and Mother to successfully complete individual counseling to address their domestic violence and drug and alcohol issues. *Id.* at ¶¶ 11-12.

Permanency review hearings were conducted on January 10, 2019, July 11, 2019, October 7, 2019, January 10, 2020, March 12, 2020, June 11, 2020, and September 10, 2020. On July 11, 2019, the court found Father to be in moderate compliance with his permanency plan. In the June 11, 2020 permanency review orders, the court stated that Father was "in moderate compliance with [the] permanency plan, in that [he] is making progress and needs to continue to follow through with the recommended services in order to assure a successful reunification." Order, 6/11/20, at 1. The June 11, 2020 permanency orders maintained the Children's permanency and concurrent placement goals and their foster placement. In addition, the June 11, 2020 orders provided Father and Mother with "no less than weekly supervised visitation with the frequency and level of supervision to be altered at the discretion of the Agency. The Agency will develop a 60 day transition plan to

commence as soon as possible." *Id.* at 3. The court scheduled the next permanency review hearing for September 10, 2020.

On August 18, 2020, Father filed a "petition to return legal custody."[2] Father averred that after the June 11, 2020 hearing, "the Agency provided the parents a transition home plan that was not within the sixty day order." Petition, 8/18/20, at ¶ 6. Father stated, "Sixty days have elapsed and physical custody of the minor children has not been returned to the natural parents." *Id.* at ¶ 7. Father requested the court return physical custody of the Children to him and Mother. *Id.* at ¶ 9.

The court considered Father's request for physical custody of the Children at the next permanency review hearing, which was held by videoconference on September 10, 2020. *See* N.T., 9/10/20, at 6-7. Father and Mother were present, along with their respective counsel. The Children were represented by their guardian *ad litem* (GAL).

CYS presented the testimony of caseworker Melissa Eisenhour, who stated:

> [W]e started a transition home after the last hearing. They began with long days, and then we went to a couple single overnights. And then we have been doing Friday morning to Monday morning, and Wednesday all day for the last couple weeks. . . .
>
> Every time somebody from our agency goes out to the home things appeared okay. However, we have gotten several referrals by ChildLine, and we've had some concerns, and therefore the [Children] have not completely gone home yet.

---

[2] Despite the wording, Father sought physical, not legal custody.

N.T., 9/10/20, 4-5. Ms. Eisenhour described four referrals between July 12 and August 7, 2020 which alleged incidents involving domestic violence, the Children's safety, and Father's illegal marijuana use. *Id.* at 7-12.

At the conclusion of the evidence, the court stated: "I commend the parents for they have in fact made strides. But I am greatly concerned about the marijuana issue[3]. . . . Then the other issues of domestic violence I don't think they've totally left, and therefore I'm going to approve the agency's recommendation not to return the children at this time." N.T., 9/10/20, at 33.

By orders dated September 10, 2020 and docketed September 15, 2020, the court maintained the Children's permanency goal of reunification and the concurrent goal of adoption. The court again found Father in moderate compliance with his permanency plan; the orders specified Father "needs to continue to follow through with the recommended services in order to assure a successful reunification." Permanency Review Order, 9/10/20, at 2. Thus, the court maintained legal and physical custody of the Children with CYS, with the Children to remain in foster placement. *Id.* at 3. Regarding visitation, the court directed Father and Mother "be provided no less than weekly supervised visitation with the frequency and level of supervision to be

---

[3] The court expressed "concern over the fact that [C]hildren were being exposed to smoke whether tobacco or marijuana and belie[f] this is not appropriate." Juvenile Court Opinion, 11/25/20, at 3-4.

- 5 -

altered at the discretion of the Agency. The Agency will continue to follow the transition plan unless deemed unsafe." ***Id.*** The court scheduled the next permanency review hearing for December 3, 2020.

On September 28, 2020, Father filed notices of appeal and concise statements of errors complained of an appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. On appeal, Father presents the following question:

> Whether the [Juvenile] Court erred/abused its discretion in determining that physical custody of the minor children should not be return to the natural parents?

Father's Brief at 16.

Both CYS and the GAL assert Father's appeal is interlocutory because the September 15, 2020 orders are not final or collateral. CYS argues:

> There is no appeal of right from the Permanency Order entered by the Court in this matter pursuant to either Pa.R.A.P. 311 or Pa.R.A.P. 313. The ruling on a decision as to whether or not children should be returned home to a parent cannot be a final order subject to appeal. To allow such an appeal would allow appeals following every permanency review hearing where reunification is the goal.
>
> ***
>
> In all dependency matters where the parents oppose placement, it follows that every permanency order would be a final order. This would mean that an appeal could be taken from every review and would essentially tie up cases in the appellate courts. Allowing such an appeal would also result in the need for every attorney to file an appeal [from orders] to remain in placement; otherwise, a failure to appeal would be considered waiving the issue.

CYS Brief at 3-4.

The GAL additionally asserts:

> Father's claims will not be irreparably lost if postponed, as Father may make the same request to return his children to him at each and every hearing yet to come.

GAL Brief at 4.[4]

CYS and the GAL cite ***In re N.M.***, where we found a permanency review order denying the parents' request to remove their child from foster care and place her in kinship care to be interlocutory and unappealable. We reiterated "we lack jurisdiction over an unappealable order, [and] it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order." ***In re N.M.***, 186 A.3d 998, 1006 (Pa. Super. 2018) (citing ***Kulp v. Hrivnak***, 765 A.2d 796, 798 (Pa. Super. 2000)). We explained:

> It is well-settled that "[a]n appeal lies only from a final order, unless permitted by rule or statute." ***Stewart v. Foxworth***, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b). Moreover, with regard to dependency matters, "[a]n order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered." ***In re H.S.W.C.-B.***, 836 A.2d 908, 910 (Pa. 2003).

***Id***.[5]

---

[4] Father has not responded with a reply brief.

[5] "In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P.

We also emphasized that "the trial court did not grant or deny a status change; the goal remained reunification throughout and [the p]arents never asked for it to be changed." *In re N.M.*, 186 A.3d at 1006. As such, we concluded our Supreme Court's decision in *In re H.S.W.C.-B.* was not controlling because the mother in that case had requested a goal change. *Id.* at 1007.

Following *In re N.M.*, this Court in *In re J.M.* quashed as interlocutory and unappealable permanency orders prohibiting visits at the mother's home if the mother or children tested positive for drugs. Referencing *In re H.S.W.C.-B.*, we stated:

> The orders at issue in *H.S.W.C.-B.* denied a child welfare agency's petitions to terminate parental rights and to change the permanency goal to adoption. This Court had quashed the agency's appeal because the order denying the petitions maintained the *status quo.* The Supreme Court rejected the holding of our Court, reasoning that "[m]aintaining the *status quo* could put the needs and welfare of a child at risk" because if the same trial judge repeatedly and erroneously denies requests to change the permanency goal, the "improper order" would always be shielded from appellate review. *Id.* at 910-11. The Court further reasoned that
>
>> [a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered. Pa.R.C.P. 1915.10. Such an order may be modified at any time, provided the modification is in the best interest of the child. *See* 23 Pa.C.S. § 5310; *Karis v. Karis*, 544 A.2d 1328, 1331-32. If denial of a custody modification petition is final when entered, the

---

313." *In re J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019) (footnote omitted). As to the second prong, the orders from which Father appeals in this case are not appealable by right because Father did not seek permission to appeal.

> denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well. ... We now adopt the recent pronouncement in *In re A.L.D.*, [797 A.2d 326 (Pa. Super. 2002)], where the Superior Court declared all orders in termination matters final. An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered. *See id.*

[*In re H.S.W.C.-B.*, 836 A.2d] at 911.

*In re J.M.*, 219 A.3d at 652. Pertinently, we observed, "Although our Supreme Court's statement regarding the finality of visitation orders is broad and sweeping, in context, we think that the Court merely was referring to visitation orders entered under the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, as a point of comparison." *Id.* at 653.

> When examined closely, the Supreme Court's discussion indicates that instead of making a new sweeping pronouncement with its statement that **all** orders dealing with custody and visitation orders are final when entered, the Court appeared simply to be making a correlation between custody actions pursuant to the Child Custody Act, dependency actions pursuant to the Juvenile Act, and termination of parental rights matters pursuant to the Adoption Act. Indeed, immediately after citing law relating to custody actions pursuant to the Child Custody Act, the *H.S.W.C-B.* Court stated, "[i]f [a] denial of a custody modification petition is final when entered, the denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well." *H.S.W.C-B.*, 836 A.2d at 911.

*Id.* at 653-654 (emphasis in original). Therefore, we determined the "statement in *H.S.W.C.-B.* regarding the finality of 'orders dealing with . . . visitation' was a mere observation and interpretation of existing law pursuant to the Child Custody Act, not a binding prospective holding regarding orders

- 9 -

dealing with visitation pursuant to the Juvenile Act." *Id.* at 654. We reasoned:

> All permanency review orders broadly deal with custody and visitation. *See* 42 Pa.C.S. § 6351(e)-(f). If the *H.S.W.C.-B.* Court intended to make a sweeping pronouncement regarding the finality of all orders dealing with custody or visitation in all contexts, it could have simply held that all orders entered pursuant to the Juvenile Act are appealable, not only ones that grant or deny a status change.

*Id.* (footnote omitted). We thus concluded that "placing location restrictions on [the m]other's visits with [the c]hildren until all were drug-free . . . is not a 'status change' within the meaning of *H.S.W.C.-B.*" *Id*.

Instantly, the permanency review orders from which Father appeals do not grant or deny a goal change, and the goal of reunification with the concurrent goal of adoption remained unchanged. No party sought a goal change before or during the September 10, 2020 hearing, and the court did not address goal change. Rather, the court heard evidence about what transpired in the three months since the prior review hearing on June 11, 2020, and addressed Father's request to change the Children's placement from foster care to Mother and Father. Consistent with *In re J.M.*, we find the orders denying Father's request do not constitute a "status change" as contemplated in *H.S.W.C.-B.* Further, the orders do not dispose of all claims and all parties. Accordingly, the orders are not final orders as set forth in Pa.R.A.P. 341.

- 10 -

Likewise, the permanency review orders are not collateral orders under Pa.R.A.P. 313(b). This Court explained:

The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *See* Pa.R.A.P. 313.

**Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right**. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

*In re W.H.*, 25 A.3d 330, 335 (Pa. Super. 2011) (some citations omitted).

*In re J.M.*, 219 A.3d at 655 (emphasis added).

In *In re N.M.*, we determined the permanency order was not separable from or collateral to the main cause of action where the trial court denied the parents' request to change the placement of the child and the placement remained the same. We also determined that review of the decision would not be irreparably lost if we postponed it. *Id.* However, because the case also involved the parents' appeal from the court's termination of their parental rights, we found "the entire record . . . is now reviewable." *In re N.M.*, 186 A.3d at 1008. We stated:

. . . because the trial court has terminated Parents' parental rights to N.M., the entire record from the permanency hearings, including that from the December 8, 2016 hearing, is now

- 11 -

reviewable on appeal from the court's termination decrees. **_See In the Interest of A.L.D._**, **_supra_** (all decrees in termination of parental rights cases are considered final, appealable orders). **Procedurally, the entry of the orders terminating Parents' rights to N.M. acts to finalize the interlocutory permanency review orders**.

**_Id._** (emphasis added).

In **_In re J.M._**, we determined that permanency orders did not constitute collateral orders where the second and third prongs of the collateral order test were not met. **_In re J.M._**, 219 A.3d at 660-61 ("Because [c]hildren have been adjudicated dependent and [m]other does not have custody of them, [m]other does not possess an unfettered right to visit with [c]hildren under any conditions," and mother's right to home visits in general were not irreparably lost.).

Consistent with the foregoing, we find the September 15, 2020 permanency orders are not separable from or collateral to the main cause of action, where the court denied Father's request for a change in the Children's placement and their foster placement remained the same, and Father did not "irreparably lose" review.

For the reasons discussed above, we agree with CYS and the GAL that the permanency review orders are interlocutory and unappealable.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/06/2021

2020 NOV 25 PM 12:56
NORTH'D CO.
CLERK OF COURTS
FILED

IN THE INTEREST OF:     :

            :  JUVENILE COURT DIVISION

            :

L.C., a minor child      :

Appeal of J.A.C., Natural Father :

            :  NO: CP-49-DP-0000089- 2018

            :  1290 MDA 2020

## <u>1925 OPINION</u>

Appellant, Natural Father, is appealing the decision of the Court keeping custody of the children with Northumberland County Children and Youth rather that returning them to father.

Northumberland County Children and Youth Services first began receiving referrals regarding the family in 2017. Concerns were domestic violence and drug and alcohol abuse.

The agency received referrals in April 2018, concerning multiple text messages from natural mother that she and father had a physical altercation leaving mother bruised. There were also allegations that Father had hit E.C. leaving scratches on his neck and had struck the Minor Child L.C. with a hammer. Additionally, Father had taken a can of gasoline into the bedroom and Mother was consuming alcohol. These reports were substantiated by Children and Youth Services.

There were several subsequent referrals in June and July of 2018. Among the numerous concerns were that Mother was not mixing formula properly, that the children were experiencing developmental delays and the Mother was uncooperative with a referral to pediatric neurology.

Perhaps even more concerning was the referral that Father had threatened to beat the Mother and the child over the head with a Playstation. When agency personnel discussed this

with Father he told them he was going to "break her fucking face", "fuckin beat the shit out of her" and also "diesel covers the evidence" and last but not least "wife needs smacked the fuck up".

Mother sought and was granted a Protection from Abuse Order which she decided to ignore and allow Father continuing contact.

Due to the numerous serious concerns, a safety plan was implemented pending a hearing on the dependency petition. The children were adjudicated dependent and custody placed with Northumberland County Children and Youth Services.

Regular permanency and Placement Review hearings were held. Father was ordered to participate and complete various programs, including but not limited to, "Building Your Family" and "Active Parenting and Discipline Strategies." Parents were to regularly visit with the children, maintain housing and employment and submit to random drug testing. Additionally, parents were to enroll in and complete counselling to address the domestic violence issues and father was specifically required to attend his psychiatric appointments and remain medication compliant.

A permanency review hearing and a hearing on father's Motion to return the children was held September 10, 2020. At the conclusion of the hearing, the Court followed the Agency's recommendation not to return the children to the parents' home. Counsel for Father filed the instant appeal. The sole issue raised by Counsel is whether the Court abused its discretion in determining that physical custody of the minor children should not be returned to the parents.

The standard for review of in dependency cases requires the appellate courts to review for an abuse of discretion. Findings of facts and credibility determinations of the trial court are to be accepted by the appellate court if supported by the record. However, the appellate court is not required to accept the lower court's inferences or conclusions of law. See In re R.J.T. 608 Pa. 9, 9 A.3d 1179 (Pa. 2010).

Melissa Eisenhour, permanency caseworker for Northumberland County Children and Youth services was the sole witness at the hearing. She testified that they had started to transition the children home after the last hearing. (N.T. Permanency Review Sept. 10, 2020 Pg. 4). She testified that there were several referrals from Child Line (N.T. Permanency Review Sept. 10, 202 Pg. 5 lines 2-3). Ms. Eisenhour testified the first referral came July 12th. This was that the minor children had burns from handling fireworks at their parents' home. These allegations were substantiated by Children and Youth.

A second referral came on July 22nd that mother and father were in an argument and father pushed mother to the ground. (N.T. Permanency Review Pg. 9, lines 9-16). The case worker verified that there was an argument by talking to the minor child. During the visit to the home to speak with the child the caseworker noticed a strong smell of marijuana in the home. (N.T. Permanency Review Pg. 10, lines 13-17) The parents tried to say that the downstairs neighbor was the source of the smell. The Court notes that on a follow up visit on August 7, 2020 the caseworker again noticed the smell of burnt marijuana. Father was tested and was positive for THC at that time. The court has expressed it's concern over the fact that children

were being exposed to smoke whether tobacco or marijuana and believes this is not appropriate. Additionally, given father's past penchant for domestic abuse and the fact the child reported such abuse during the reunification period the court believes the family needs some additional time to work on its issues.

Based upon the factors and the court's familiarity with the case, and the father's history of alleged drug abuse and domestic violence the court did not approve the children's return to the parents' home.

While we recognize that this case could be considered a close call our knowledge of the history of this case and the issues of the family led us to conclude to continue reunification but not send the children home at the September 10, 2020 hearing. This sentiment has been noted by our Supreme Court as follows:

> "This case epitomizes why appellate courts must employ an abuse of discretion standard of review, as we are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record,

we are not in a position to reweigh the evidence and the credibility determinations of the trial court." In re R.J.T. 608 Pa. 9,27, 9A.3d 1179, 1190 (Pa. 2010).

**BY THE COURT:**

_____
Hugh A. Jones, Judge

Dated: 11/24/20

FILED
2020 NOV 25 PM 12: 56
NORTH'D CO.
CLERK OF COURTS

cc: Ann Targonski, Esquire
    Michael O'Donnell, Esquire
    Justin Abel, Esquire
    Cindy Kerstetter, Esquire
    Children & Youth Services
    Court