J-A13001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.G. AND J.G., MOTHER AND FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 197 EDA 2020 |

Appeal from the Order Entered December 2, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-DP-0000266-2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 08, 2020**

D.G. (Mother) and J.G. (Father) (collectively Parents) appeal from the order entered on December 2, 2019, that terminated the court's supervision of Mother's and Father's daughter, K.G., born in August of 2006, who had been adjudicated dependent under 42 Pa.C.S. § 6302 on March 11, 2019.[1] After review, we dismiss the appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Parents failed to file a Pa.R.A.P 1925(b) statement of errors complained of on appeal at the time they filed their notice of appeal with this Court as required by Pa.R.A.P. 1925(a)(2)(i).  In response, this Court directed Parents to file their 1925(b) statement by February 6, 2020, and they complied. Therefore, this Court will not dismiss the appeal on this basis.  ***See In re: K.T.E.L.***, 983 A.2d 745 (Pa. Super. 2009) (failure to file a 1925(b) statement is considered a defective notice of appeal and will not be dismissed since failure to file the statement is a violation of a procedural rule and not an order of court).

In its opinion entered on January 31, 2020, the trial court set forth the following factual background and procedural history of this case as follows:

On October 13, 2018, K.G., who was twelve years' old at the time, attempted to commit suicide by intentionally ingesting a combination of opiate and benzodiazepine medication which were left unsecured in her parents' bathroom. She was found in the family home by her [M]other. K.G. was revived and was transported to Lehigh Valley Hospital-Cedar Crest. She suffered lung damage and a blood clot in her neck stemming from the suicide attempt. During K.G.'s emergency medical treatment, she actually passed away on two separate occasions and had to be medically revived.

Prior to her suicide attempt, in August 2018, K.G. and her [M]other attended K.G.'s annual pediatric check-up with Dr. Katalyn Linder. As part of the Dr. Linder's pediatric practice, she had K.G. complete a brief survey[,] which is a simple diagnostic screening device provided to all patients over the age of 12. The survey is meant to detect if the child admits suffering from or exhibit[s] signs of depression. Based on K.G.'s responses to the survey, the pediatrician determined K.G. may be suffering from moderately severe depression.

Dr. Linder spoke with K.G. in the presence of her [M]other. The child told Dr. Linder she had been feeling more depressed and anxious recently, but K.G. did not express any thoughts of self-harm. Based on the screening device score and the child's statements, the doctor advised K.G.'s [M]other to pursue therapy for K.G., which … [M]other initially agreed to pursue. Approximately six weeks later, after Dr. Linder had not heard back about any updates on [a] psychological consultation, the doctor asked her staff to check with K.G.'s [M]other. When contacted, K.G.'s [M]other indicated she and her husband declined to follow up with psychological treatment on the grounds the child was only going through normal emotional mood swings for an adolescent. A few days later, K.G. tried to kill herself by overdosing on prescription drugs.

Trial Court Opinion (TCO), 1/31/20, at 2-3.

The trial court then proceeded to explain the treatments K.G. received over the ensuing months and the actions of Parents, who the court concluded were opposed to recommended in-patient treatment. The court also noted that Mother "was concerned about the stigma associated with inpatient treatment[]" and gave directions to K.G. to lie to the medical professionals that "she was not depressed and did not have any intention of killing herself…." *Id.* at 4. One of K.G.'s treating physicians expressed her concern that due to Parents' "refusal to admit [K.G.] into the recommended in-patient psychiatric care, [the doctor] feared K.G. [might] attempt suicide again." **Id.** at 5.

> On November 7, 2018, following an anonymous referral, the Lehigh County Office of Children and Youth Services (OCYS) obtained an Order for Emergency Protective Custody for K.G. A shelter care hearing was held on November 13, 2018, at which time the child was kept in the custody of OCYS. The case was scheduled for an adjudication hearing before the Hon. Melissa Pavlack on November 19, 2018, but the parties entered into an agreement to postpone the adjudication hearing for 60 days. By the terms of the agreement, reduced to an Order of Court filed on November 26, 2018, the child was to remain in the legal custody of OCYS, but was returned to the physical custody of her [F]ather. The [M]other's visitation with the child would be supervised.
>
> The [c]ourt conducted dependency adjudication hearings on January 28, 2019, February 28, 2019, March 1, 2019, and March 4, 2019. At the close of the hearing, the [c]ourt adjudicated K.G. dependent pursuant to 42 Pa.C.S.[] § 6302 "Dependent Child" (1). As part of the dependency adjudication, [Mother] was removed from the marital residence but was permitted to have supervised contact with K.G. [Father] was determined to be a nonoffending parent, and continued to live in the marital home with K.G. and her younger brother.
>
> Permanency review hearings were held on April 9, 2019[,] and June 11, 2019. The [c]ourt gradually lifted the restrictions on the [M]other's level of contact with K.G. [Mother] was eventually

- 3 -

allowed to return to live in the marital home with her husband and two children following a permanency review hearing on June 11, 2019. The dependency order was vacated and the case was dismissed by Order of Court entered on December [2], 2019.

*Id.* at 5-6.

Parents filed their appeal from the order that vacated the dependency and dismissed the matter, and now raise the following issues for our review:

1. A finding of dependency can be made if and only if there is clear and convincing evidence that a child is presently, on the date of the adjudication, without proper parental care and control. Here, the evidence presented was from a period four months before the dependency determination. With a lack of evidence close in time demonstrating K.G. was presently without proper parental care and control, did the trial court err in finding K.G. dependent?

2. A finding of dependency can be made if and only if there is clear and convincing evidence that proper parental care and control is not immediately available. Here, there was no evidence [Father] caused any issues and his only fault was failure to push, four months before adjudication, for inpatient treatment. When there is no evidence of fault and no evidence that [Father] was unable to immediately provide proper parental care and control[,] can K.G. be dependent?

Parents' brief at 4.

In essence, Parents' arguments are directed *solely* to the court's determination relating to the finding of dependency, which occurred on March 4, 2019. They in no way address the order appealed from that dismisses the dependency action.

To begin, we recognize that appeals are usually taken from final orders.

Generally, a final order is any order that disposes of all claims and all parties. Pa.R.A.P. 341(b). Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, *see* 42 Pa.C.S. § 6341(c)), this Court has held that it is the dispositional order

following a dependency adjudication that is a final appealable order. **In Interest of C.A.M.**, 399 A.2d 786 (Pa. Super. 1979).

**Interest of J.M.**, 219 A.3d 645, 650-51 (Pa. Super. 2019).

Moreover, "an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." **Interest of J.L.**, 216 A.3d 233, 237 (Pa. Super. 2019). "The concept of mootness focuses on a change that has occurred during the length of the legal proceedings." **Id.** (quoting **In re Cain**, 590 A.2d 291, 292 (Pa. 1991)). "If an event occurs that renders impossible the grant of the requested relief, the issue is moot and the appeal is subject to dismissal." **Id.** (quoting **Delaware River Preservation Co., Inc. v. Miskin**, 923 A.2d 1177, 1183 n.3 (Pa. Super. 2007)).

Relying upon the above statements of the law, it is evident that Parents should have filed their appeal from the court's order finding Child dependent in a timely manner, *i.e.*, within thirty days of the issuance of that order. That order was a final order. **See Interest of J.M.**, 219 A.3d at 651. Additionally, the order from which Parents presently appeal dismisses the dependency, and therefore, the relief Parents seek has already been granted. Thus, due to the impossibility for this Court to grant relief, in that it has already been granted, we conclude that Parents' request for relief is moot and their appeal must be dismissed.

Appeal dismissed as moot.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 7/8/2020*