J-S09016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.W.-R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R., MOTHER | : : : : : : | |
| | : | No. 1709 EDA 2021 |

Appeal from the Order Entered August 6, 2021,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s):  CP-46-DP-0000108-2021.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 13, 2022**

Appellant J.R. (Mother) appeals from the August 6, 2021 order issued by the juvenile court, which "bifurcated" its adjudicatory dependency hearing as to Mother's two-year-old daughter, K.W.-R. (the Child). **See** 42 Pa.C.S.A. § 6351.  The August 6 order was essentially a continuance order, which scheduled the next date and outlined the interim responsibilities of Mother until the adjudicatory hearing could be completed on August 20, 2021. Specifically, the August 6 order stated that Mother shall cooperate with the Montgomery County Office of Children and Youth (OCY) to schedule supervised visitations between K.W.-R., and her older 8-year-old brother N.D., who had been previously adjudicated dependent and placed in foster care; the order also prohibited Mother from participating in these sibling visits.

_____

[*] Former Justice specially assigned to the Superior Court.

Mother appealed the August 6 order, because she alleged that N.D. posed a safety risk to K.W.-R. Because the August 6 order is interlocutory, we quash Mother's appeal.

The relevant factual and procedural history is as follows: The family came to the attention of the OCY in May 2021. A friend of Mother's had agreed to watch the Children while Mother was incarcerated.[1] But after three days, the friend was unable to care for the Children, and without knowing when Mother would be released, the friend alerted the local police department.

The police discovered that Mother's home was unkempt. N.D. reported that he did not have a bed and slept in the hallway. N.D. also disclosed that Mother beat him with a belt and an extension cord. The juvenile court granted OCY's request for emergency protective custody, and the Children were placed in foster care. The foster parents took the Children to the emergency room. N.D. had multiple scars on his body, and K.W.-R. had a scab abrasion on her right forearm.

OCY filed dependency petitions on June 1, 2021, and Mother was released on bail on June 3. On June 5, the juvenile court held an adjudicatory hearing as to both Children. The court adjudicated N.D. dependent and ordered that he remain in foster care. As part of its adjudicatory order, the court mandated that N.D. have supervised visits with K.W-R. However, the court determined that OCY did not establish dependency regarding K.W.-R.'s

---

[1] The whereabouts of the Children's respective fathers are unknown.

case. The court dismissed her petition, and she was returned to Mother's care.

Over the next several weeks, Mother refused to cooperate with OCY. She would not make herself available for a home inspection and declined to sign releases. Meanwhile, N.D. disclosed that Mother had physically abused him and K.W.-R. He claimed that Mother pushed K.W.-R. down the stairs, that she made the Children climb into a dog cage in their backyard, that she left him to care for K.W.-R., that she choked him while he slept, and that he witnessed Mother hitting K.W.-R. Also during this time, Mother reportedly left K.W.-R. unattended with a neighbor's child on the front porch. K.W.-R. was sprayed with Raid bug spray and had to go to the emergency room. Based upon the ongoing concerns with Mother's mental health and the safety risks she posed, OCY decided to re-open its investigation and filed a second dependency petition on K.W.-R.'s case.

On August 6, 2021, the juvenile court began its adjudicatory hearing. The court heard testimony from the attending emergency room physician, who examined the Children back in May. The doctor testified that she thought N.D. was abused, and that since one child was abused there was potential for K.W.-R. to be abused. The doctor also observed that N.D. was very protective of his sister, and that K.W.-R. responds affectionately toward N.D. The juvenile court also heard testimony from N.D.'s foster mother, who testified that he is terrified of Mother. He had one virtual visit with Mother, but became so scared, that he excused himself from the computer screen and hid under a

table. The foster mother also reported that N.D. has not been able to see his sister, despite requesting the same.

The adjudicatory hearing was not concluded on August 6, 2021. The court issued an order scheduling a second date for August 20. In the interim, the court ordered Mother to make K.W.-R. available for supervised visitations with N.D., and the court prohibited Mother from participating in these visits. *See* Order of Court, 8/6/20 at ¶¶ 1-3.

Mother filed a motion for reconsideration, wherein she requested that the provision ordering sibling visits be rescinded, because N.D. had attempted to have sex with K.W.-R. two years earlier when K.W.-R. was 14 months old. Mother also claimed that N.D. was dangerous, that he killed two family pets, and that he had used a kitchen knife to destroy his bed. The court denied Mother's motion for reconsideration, and Mother timely-filed this appeal.[2, 3]

Mother presents the following issues for our review:

> 1. Whether it was an abuse of discretion by the court to order visits between the Children?

_____

[2] Initially, Mother failed to comply with Pa.R.A.P.(a)(2)(i), obligating an appellant to file a concise statement of errors complained of on appeal contemporaneously with the notice of appeal. This Court issued a Rule to Show Cause and ordered Mother to comply. Mother complied, and we discharged our Rule.

[3] The court resumed the hearing on August 20, 2021, and subsequently adjudicated K.W.-R. dependent. The court kept K.W.-R. in Mother's custody. We observe that Mother has filed additional appeals, which have been consolidated and set before a different panel of this Court. *See Int. of N.D.*, (195 WDA 2022); *see also In Int. of K.W.-R.*, (196 EDA 2022).

2. Whether the Court had jurisdiction or power to order said visits?

3. Whether it was an error, unconstitutional, and an abuse of discretion for the court to order that Mother shall not participate or be present during visits between K.W.-R, female age 2 and N.D., male age [8]?

Mother's Brief at 8 (capitalization adjusted).[4]

Before we reach the merits of Mother's appeal, we must decide whether this matter is properly before this Court. For an order to be appealable, "the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313." *Interest of J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019).

Anticipating this jurisdictional question, Mother contends that the order is final, or in the alternative, that the order is still reviewable under the collateral order doctrine. To argue that the August 6 order was final, Mother relies on our Supreme Court's decision *In re H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003). There, the issue was whether the denial of goal-change and termination petitions constituted a final order, from which the local child and youth services agency could directly appeal. The Court held that the denial was a final order, even though the *status quo* did not change. In reaching its decision, the Supreme Court analogized the dependency proceedings with custody proceedings. The Court reasoned that, when a parent petitions for

_____

[4] Rather astonishingly, neither OCY, nor the guardian *ad litem* for K.W.-R. submitted a brief or otherwise responded to Mother's appeal.

custody modification, and that petition is denied, the denial also constitutes a final order even though the *status quo* did not change.

Mother relies on **H.S.W.C.-B.** for one excerpt. When the Supreme Court compared its dependency case with a custody action, the Court stated that "all orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings are final when entered." **Id**, 836 A.2d at 911. Instantly, Mother extrapolates this quote to mean that **any** order that references custody or visitation is *per se* final.

We find Mother's argument to be rather disingenuous, given that Mother also relies on **J.M.**, **supra**, which explicitly rejected the very notion Mother seeks to advance. In **J.M.**, we explained:

> When examined closely, the Supreme Court's discussion [in **H.S.W.C.-B.**] indicates that instead of making a new sweeping pronouncement with its statement that all orders dealing with custody and visitation orders are final when entered, the Court appeared simply to be making a correlation between custody actions pursuant to the Child Custody Act, dependency actions pursuant to the Juvenile Act, and termination of parental rights matters pursuant to the Adoption Act. Indeed, immediately after citing law relating to custody actions pursuant to the Child Custody Act, the **H.S.W.C.-B.** Court stated, "[i]f [a] denial of a custody modification petition is final when entered, the denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well." **H.S.W.C.-B.**, 836 A.2d at 911.

**J.M.**, 219 A.3d at 653-54

We concluded that the Supreme Court's statement was a mere observation and interpretation of the law pursuant to the Child Custody Act,

- 6 -

not a binding prospective holding regarding all orders dealing with visitation pursuant to the Juvenile Act. ***Id.*** at 654.

To put it charitably, Mother's reliance on ***H.S.W.C.-B.*** is misplaced. Here, the August 6 order merely continued the adjudicatory hearing for two weeks. The order included a provision obligating Mother to facilitate the sibling visitation in the interim. In no way did the August 6 order "dipose[] of all claims and of all parties." ***See*** Pa.R.A.P. 341(b) (relating to final orders).

Mother's argument for appealability does not end there. She also contends that we have jurisdiction to review the matter because the August 6 order was a collateral order. We have explained:

> [t]he "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. ***See*** Pa.R.A.P. 313.
>
> Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

***J.M.***, 219 A.3d at 655 (citation omitted).

In ***J.M.***, we thoroughly addressed the complicated task of determining whether an order is "separable from and collateral to the main cause of action" under the first prong of the collateral order doctrine. ***See id.*** at 655-60.

Arguably, the issue of sibling visitation is separable from the issue of K.W.-R.'s dependency. But we need not rule definitively under the first prong, because Mother's argument fails the second and third prongs.

The next question is whether the right involved is too important to be denied review. In *J.M.*, we observed that a parent's "constitutionally protected liberty interest" in the custody, care, and control of her child is "an important right" for purposes of the collateral order doctrine. *Id.* at 660. But the mere implication of this parental right does not automatically render the right too important to be denied review. For instance, when a child has been adjudicated dependent, a parent does not possess an unfettered right to dictate the terms of visitation. *Id.* at 660-61. In *J.M.*, the juvenile court placed certain restrictions on the mother's ability to visit the child. Although the court's restrictions implicated the mother's parental rights, we did not conclude that the mother's right was too important to be denied review. *Id.*

This case is distinguishable from *J.M.* in some regard. Here, when the juvenile court issued its August 6 order, K.W.-R. was neither adjudicated dependent nor the subject of an emergency custody order. Thus, unlike the case in *J.M.*, Mother's rights to K.W.-R. remained unabridged. Nevertheless, we must also recognize the context surrounding the juvenile court's August 6 order to determine whether the right is too important to be denied review.

Mother argues that a visitation would be contrary to K.W.-R.'s best interests because N.D. posed safety risks to K.W.-R. Not only did the court hear testimony to defeat this allegation, the August 6 order also ensured that

any sibling visitation would be supervised. And given that the Court would resume the adjudicatory hearing two weeks later, the August 6 order likely anticipated that there would only be one or two sibling visits during the interim. At that point, the court would revisit not only the visitation issue, but the larger question of K.W.-R.'s best interests.[5] Accordingly, at this juncture, we conclude the right involved is not too important to be denied review.

Turning to the third prong, whether the claimed right would be irreparably lost if review was postponed, we reiterate that the August 6 order was in effect for merely two weeks and that any sibling visitation would be supervised to ensure safety. The issue would also be addressed again on August 20, and regularly during the Children's subsequent permanency review hearings. Mother's challenge would not be irreparably lost. Thus, we conclude that even if the first prong of the collateral order doctrine was met, the last

_____

[5] We also note that when the juvenile court ordered sibling visitation, the court evidently meant to enforce its prior visitation directives from N.D.'s case. The court had issued previous orders on N.D.'s docket in accordance with 42 PA.C.S.A. § 6351(b.1), (f)(10). Under Section 6351, the juvenile court was **required** to ensure sibling visitation occurs no less than twice a month, except when visitation would be contrary to the safety or well-being of the children.

Of course, Mother argues in her second appellate issue that the juvenile court lacked authority to order visitation on K.W.-R.'s case, because this Child had yet to be adjudicated dependent. Given our disposition, we do not reach the merits of this issue. We mention it here only to explain that there was a basis for the court's August 6 order.

two prongs are not met at this time. The August 6 was not a collateral order under Pa.R.A.P. 313.[6]

Appeal quashed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: _5/13/2022_

---

[6] Additionally, we also observe that because the August 6 order was a two-week interim order, which has since been superseded by the August 20 order adjudicating K.W.-R. dependent, we conclude that Mother's challenge to the August 6 order is now moot. ***See E.B. v. D.B.***, 209 A.3d 451, 461 (Pa. Super. 2019) (holding that the provisions of an interim custody order have been rendered moot by the issuance of the final custody order); ***see also C.H.L. v. W.D.L.***, 214 A.3d 1272, 1279-80 (Pa. Super. 2019) (holding that the provisions of a temporary Protection From Abuse Order were rendered moot by the issuance of a final Protection From Abuse Order). Put another way, even if we agreed with Mother that the court erred, we could not issue an order that would have any legal force of effect. ***See In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").