J-A25037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 296 WDA 2022 |

Appeal from the Order Entered February 28, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s): 225 of 2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.V. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 297 WDA 2022 |

Appeal from the Order Entered February 28, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s): 224 of 2021

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: OCTOBER 28, 2022**

A.R. and A.V. (the Children),[1] by Steven George, Esquire, their guardian *ad litem* (GAL), appeal from the February 28, 2022, orders entered in the Erie County Court of Common Pleas, which adjudicated them dependent and

---

[1] A.R. was born in March 2021 and A.V. was born in August 2017.  **See** Dependency Ct. Op., 4/19/22, at 1.

conditioned A.C.'s (Mother) visitation with them based on her drug test results. The Children assert, *inter alia*, that the dependency court erred by conditioning Mother's visits on her drug test results without clear and convincing evidence that the condition was in their best interests or that the visits posed a grave threat to the Children. Erie County Office of Children and Youth (OCY) has filed a motion to dismiss the appeal for mootness because Mother's parental rights were recently involuntarily terminated. Based on the following, we quash the appeal and deny OCY's motion as moot.

The dependency court set forth the following relevant background concerning this case:

> [The Children] were removed from Mother's care by Emergency Protective Order on October 12, 2021,[2] and on October 26, 2021, an Adjudication and Disposition Hearing was held. Initially, Mother did not appear for the Hearing, and after testimony presented by [OCY], the Hearing Officer found the allegations set forth in the Dependency Petition were substantiated. Mother then appeared at the conclusion of the Hearing, and the following treatment plan was put in place:
>
> 1. Participate in an agency-approved, hands-on parenting program, and follow all recommendations until successfully completed;
>
> 2. Participate in a mental health evaluation and follow all recommendations to include therapy and medication management if deemed therapeutically appropriate. Further, [Mother] will sign all necessary releases from the provider and [OCY] in order for [OCY] to obtain the evaluation and verify services;

---

[2] The Children were then placed in the same foster home. *See* Dependency Ct. Op. at 2.

3. Participate in a Drug and Alcohol Assessment through Erie County Offices of Drug and Alcohol and follow all recommendations. [Mother] will sign a release of information from the provider and [OCY] in order for [OCY] to obtain the assessment and recommended services;

4. Participate in domestic violence counseling and follow all recommendations. Further, [Mother] will sign all necessary releases from the provider and [OCY] in order for [OCY] to verify services and participation;

5. Refrain from the use of drugs and alcohol and participate in random urinalysis through Esper Treatment Center;

6. Obtain and/or maintain safe and secure housing, including residing with appropriate individuals, and provide [OCY] with a signed lease;

7. Obtain and/or maintain gainful employment or another form of legal income in order to meet the needs of the [C]hildren. Further, [Mother] will provide [OCY] with verifiable proof of income, and;

8. Maintain weekly contact with the caseworker and attend any and all scheduled meetings with the caseworker in order to provide and receive updates.

[The court also ordered Mother to have supervised visitation at an agency approved location. The court stated the visitation could increase with frequency and duration and decrease in supervision according to Mother's progress with the court-ordered services and her ability to demonstrate stability. The court further stated that if Mother appeared to be under the influence at the time of the visitation, it would be cancelled.]

The first Permanency Review Hearing was held on January 26, 2022, before the [dependency c]ourt. Mother was present and represented by Attorney Emily Merski, and Attorney Amy Jones represented [OCY]. [The Children] were not present; however, they were represented by their [GAL].

Upon [her] arrival at the Hearing, the [c]ourt sent Mother to the Erie County Adult Probation Department to submit to

urinalysis testing; Mother tested positive for Fentanyl. The urinalysis results were provided to Mother and the parties on the record. Despite the results, Mother denied using Fentanyl and denied knowing how it got into her system.

Additionally, the [c]ourt heard testimony that Mother was not engaging in the services identified in her treatment plan or was not keeping in regular contact with [OCY]. Despite behavioral issues, at the onset, [the Children] were doing well in their foster home. Ultimately, the [c]ourt found that Mother had been minimally compliant with the permanency plan and had made minimal progress towards alleviating the circumstance which necessitated [the Children's] original placement. At the conclusion of the Hearing, the goal remained reunification, and *the second Permanency Review Hearing was scheduled for **May 2, 2022***.

On February 18, 2022, [OCY] filed a Motion for Change in Visitation, averring that since the January 28, 2022 Permanency Hearing, Mother had seven (7) urinalysis tests scheduled; two (2) were positive for Fentanyl, one (1) was presumed positive (could not produce), two (2) were no show positives, and two (2) were negative.[1] Based on Mother's continued use of Fentanyl, [OCY] requested that the [c]ourt condition Mother[']s visitation on clean urinalysis results. The GAL filed a written response on behalf of [the Children], objecting to [OCY]'s request. The [c]ourt granted [OCY]'s Motion, indicating as follows:

> The [c]ourt **is not limiting Mother's visitation, just conditioning the visits on Mother's sobriety**. It is not in [the Children's] best interest to have visits with Mother while she is repeatedly testing positive for Fentanyl.

Specifically, the [o]rder stated, "**in the event that a positive urine result is received, the mother shall not have a visit until the next clean urine**." Thereby, conditioning the visits on Mother's own actions. . . .

_____

[1] Prior to filing this Motion, Mother's last visit with [the Children] was on 02/02/2022. It [was] unknown to the [c]ourt why no visits occurred between February 2, 2022, and the filing of the Motion.

Dependency Ct. Op. at 1-3 (record citations omitted; some emphases in original and some added).

The Children filed timely notices of appeal and Pa.R.A.P. 1925(a)(2)(i) concise statements of errors complained of on appeal.[3] The dependency court filed a Rule 1925(a) opinion on April 19, 2022.

Subsequently, this Court issued a rule on the Children to show cause why the order was, as they claimed, appealable under Pa.R.A.P. 313. *See* Order, 3/30/22, *citing Interest of J.M.*, 219 A.3d 645 (Pa. Super. 2019) (order, continuing the dependency permanency review hearings for court administration to determine location and time of future hearings and directing that no home passes will be granted if any child or parent tests positive for drugs, was quashed as interlocutory and not collateral). The Children's GAL filed a response. This Court thereafter discharged the rule to show cause but referred the matter to the merits panel. *See* Order, 4/13/22.

Meanwhile, a permanency review hearing was held before the dependency court on May 2, 2022. The court ordered that [the Children's] permanency goal be changed to adoption and OCY move forward with filing petitions to terminate parental rights. Eight days later, OCY filed petitions for the involuntary termination of Mother's parental rights. An evidentiary hearing was held on July 14, 2022, before the orphans' court. On August 11,

_____

[3] This Court consolidated the Children's appeals *sua sponte* on April 13, 2022.

2022, the orphans' court issued decrees involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5), and (b).[4] **See** Orphans' Ct. Docket Nos. 28A In Adoption 2022 & 28 In Adoption 2022.

As mentioned above, on October 5, 2022, OCY filed a motion to dismiss the appeal for mootness pursuant to Pa.R.A.P. 1972(a)(4) (any party may move to dismiss for mootness).[5] We note, with disapproval, the Children's GAL has not filed a response.

The Children raise the following issues before this Court:

1. Whether the [dependency] court's February 25, 2022 order regarding visitation is appealable pursuant to Pa.R.A.P. 313 and the collateral order doctrine[?]

2. Whether the [dependency] court erred by tying all of the [C]hildren's visitation with Mother to Mother's drug test results[?]

The Children's Brief at 3.

In the Children's first argument, they claim the February 28th orders are appealable pursuant to collateral order doctrine. Appealability implicates this Court's jurisdiction to review controversies. **See Kulp v. Hrivnak**, 765 A.2d 796, 798 (Pa. Super. 2000) ("[Since we] lack jurisdiction over an

---

[4] The court also terminated the rights of the Children's father, A.R. As indicated **supra**, the appeal before us only relates to Mother.

[5] OCY filed a previous motion to dismiss the appeal for mootness on May 27, 2022, which followed entry of the goal change order but before the termination decrees were issued. This Court issued an order on June 27, 2022, denying the application "without prejudice" to be raised again. Order, 6/27/22.

unappealable order, it is incumbent on us to determine . . . whether the appeal is taken from an appealable order."). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." ***Barak v. Karolizki***, 196 A.3d 208, 215 (Pa. Super. 2018) (citation omitted).

"'An appeal lies only from a final order, unless permitted by rule or statute.' Generally, a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b)." ***Interest of L.B.***, 229 A.3d 971, 975 (Pa. Super. 2020).[6]

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. ***See*** Pa.R.A.P. 313.
>
> Our Supreme Court has directed that Rule 313 be interpreted narrowly . . . . To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

***Interest of L.B.***, 229 A.3d at 975 (citations omitted).

Here, the Children contend that all three prongs of the collateral order doctrine have been satisfied. First, they assert the first prong has been met because their claim "presents a distinct legal issue — whether a trial court can

---

[6] The Children did not dispute that the order at issue is not a final order for appellate review purposes.

tie all contact between a child and a parent to the parent's random drug tests." The Children's Brief at 11 (emphasis omitted). The Children state that the order at issue "is clearly separable from the main cause of action" as "analysis of this issue does not require [this Court] to analyze the adjudication of dependency or the disposition." *Id.* at 13. As for the second prong, the Children argue that this appeal involves the complete denial of visits, and therefore, it is a right too important to be denied review. *Id.* at 13. They allege that the court imposed a condition "that eliminates contact altogether" and such an act can have a significant effect on them. *Id.* at 14. Furthermore, the Children state that the dependency court's "reliance on the assertion that Mother theoretically controls whether visits occur is misplaced because [they,] the children[,] do not control whether Mother has negative drug test results, and [they], not Mother, [are] asserting a right to visitation." *Id.* at 16. Lastly, as to the third prong, the Children maintain that the denial of visitation can "ultimately affect a custody determination or even the terminal of parental rights[,]" and thus, it is a right too important to be denied review. *Id.* at 17. They state that "if review of the . . . court's order is deferred until the time of goal change or termination of parental rights, then the damage will already be done[,]" and that "the purported damage is the destruction of the child-parent bond." *Id.* at 18. In support of their argument, they rely on ***Interest of L.B.*** as instructive, and distinguish ***Interest of J.M.***

- 8 -

In *Interest of L.B.*, the juvenile court issued a permanency review order, which suspended the father's visitation pending a recommendation by the child's therapist, and set a date for a subsequent permanency review hearing. *Interest of L.B.*, 229 A.3d at 974-75. A panel of this Court determined the order was appealable under the collateral order doctrine. *Id.* at 976-77. The Court determined the first prong was satisfied, where the father's challenge — to "the juvenile court's decision to outsource to a therapist the determination of when his visits with [the child] may or may not resume" — was "clearly separable from and collateral to the main cause of action." *Id.* at 977. The Court further reasoned:

> [B]ecause this order resulted in the complete denial of visitation, it is both a "right . . . too important to be denied review," and "if review is postponed until final judgment in the case, the claimed right will be irreparably lost." [*See*] Pa.R.A.P. 313(b). Accordingly, . . . this order satisfies both the second and third prongs of the collateral order doctrine.

*Id.* at 976.

In *Interest of J.M.*, the trial court permitted the children to visit the mother in her home "provided that [the m]other and [the c]hildren all submitted to a drug screen and tested negative for any illegal substances." *In the Interest of J.M.*, 219 A.3d at 649 (record citation omitted). The mother and two of the children subsequently tested positive for drugs. The court then issued an order prohibiting visits at the mother's home, including over winter holidays, if the mother or children tested positive for drugs. *Id.* at 649-50. The mother then filed an appeal. *Id.* at 650.

As to the first prong, a panel of this Court acknowledged at length the complicated nature of dependency matters, specifically visitation, and stated:

We leave for another day the resolution of what constitutes the cause of action in a dependency matter, and whether a permanency review order placing restrictions on a parent's visitation is separable from the main cause of action, because the instant case is dispositive on the last two prongs of the collateral order test.

*Interest of J.M.*, 219 A.3d at 660.

The Court then opined:

As noted above, the latter two prongs are importance of the right and irreparable loss. Pa.R.A.P. 313(b) (providing that "the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"). There is no question that a parent's "constitutionally protected liberty interest" in visiting her dependent children is an important right; this is reflected by the requirement that when the permanency goal remains reunification, visitation should not be denied or reduced unless it poses a "grave threat" to the children. *See In re C.J.*, 729 A.2d 89, 94 (Pa. Super. 1999). But the same cannot be said of a parent's right to visit with her dependent children in her home regardless of the parent's and/or children's sobriety. Because [the c]hildren have been adjudicated dependent and [the m]other does not have custody of them, [the m]other does not possess an unfettered right to visit with [the c]hildren under any conditions. *See In the Interest of T.D., Jr.*, 57 A.3d 650 (Pa. Super. 2012) (holding that juvenile court has discretion as part of its dispositional powers under the Juvenile Act to direct a parent to undergo a drug and alcohol evaluation before placing a delinquent child with the parent). Moreover, there is no indication in the record that [the m]other was denied the right to see [the c]hildren in any fashion, or was denied the right to visit with [the c]hildren in her home environment indefinitely. Accordingly, at this juncture, we conclude the right involved is not too important to be denied review.

Turning to the third prong, irreparable loss, we acknowledge that the four days over the [winter] holiday at issue cannot be

recovered. But [the m]other's right to home visits in general have not been irreparably lost at this point. The juvenile court explicitly told the parties at the hearing that it would revisit the issue. The order itself did not deny home visits indefinitely; it simply required [the m]other and [the c]hildren to be drug-free before visiting at [the m]other's home. Most significantly, the permanency review hearing was continued for one month, meaning that the juvenile court would have the opportunity to address the issue again after hearing all of the most-up-to-date evidence in the case. Thus, we conclude that even if the first prong of the collateral order test could be met, the last two prongs are not met at the current time.

*Interest of J.M.*, 219 A.3d at 660-61.

Turning to the present matter, the dependency court relied on *Interest of J.M.*, and found the following:

Under the second prong, the Court notes that Mother's right to visit with [the Children] is conditioned upon her own actions, i.e., having clean urinalysis results. Thus, Mother can remedy the circumstances surrounding her visits at any time. It is clear to the Court that Mother is capable of doing so, as [OCY] submitted to the Court two (2) negative urinalysis results that were produced in addition to the five (5) positive urinalysis results. Therefore, Mother has only been denied the right to see [the Children] if she chooses to utilize controlled substances and/or alcohol prior to urinalysis testing and visits. Additionally, this matter will again be addressed at the next Permanency Review Hearing scheduled on May 2, 2022. Given the circumstances and Mother's unwillingness to alleviate them, the right to visitation is not too important to be denied review.

In turning to the third prong, while Mother may have missed visits with [the Children] due to her drug use, her right to visits, in general, has not been "irreparably lost." Again, Mother can visit with [the Children] whenever she chooses to abstain from utilizing controlled substances and/or alcohol, specifically, in this instance, Fentanyl. Additionally, at the time the Court signed the Court Order in question, a Permanency Review Hearing was already scheduled for May 2, 2022, whereby at this time, the Court would again review Mother's treatment plan, progress, and visitation.

> Mother's visits with [the Children] have not been eliminated. They have merely been conditioned on her own actions. Thus, the Court Order . . . does not constitute a final or collateral order for purposes of [a]ppeal and should be dismissed.

Dependency Ct. Op. at 4-5 (citations omitted).

We agree with the court's sound reasoning that **Interest of J.M.** is controlling authority in this appeal. Contrary to the Children's argument, the court's orders do not constitute a total suspension of visitation rights. Rather, the court clearly stated that it "was not limiting Mother's visitation, just conditioning the visits on [her] sobriety" and "in the event that a positive urine result is received, [M]other shall not have a visit until the next clean urine." Order, 2/28/22. While we sympathize with Children's position, they had been adjudicated dependent, and therefore, Mother did "not possess an unfettered right to visit with [them] under any conditions." **See Interest of J.M.**, 219 A.3d at 661 (citation omitted.). Indeed, Mother tested positive for Fentanyl at the time of the visits on multiple occasions. Moreover, the dependency court pointed out that it did not deny the right to visitation indefinitely as it stated it would revisit the issue at the next permanency hearing. As such, the latter two prongs, importance of right and irreparable loss, have not been met.[7] **See Interest of L.B.**, 229 A.3d at 975.

---

[7] Like **Interest of J.M.**, we decline to address the first prong of the collateral order doctrine.

- 12 -

Furthermore, we note the instant order is distinguishable from the order in *Interest of L.B.* In that case, there was a complete denial of visitation. *See Interest of L.B.*, 229 A.3d at 976-77. Accordingly, we conclude the orders are not appealable pursuant to the collateral order doctrine, and thus, we do not have jurisdiction to review Children's appeal. *See* Pa.R.A.P. 313; *Interest of J.M.*, 219 A.3d at 661.[8] Therefore, we quash Children's appeal.

Lastly, we turn to OCY's motion to dismiss the appeal on the ground that Mother's parental rights have been involuntarily terminated. Because we lack jurisdiction in this case, we deny the motion as moot.

Appeal quashed. Motion to dismiss denied as moot.[9]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2022

---

[8] Based on our disposition, we need not address the Children's remaining claim.

[9] In light of the foregoing, the Prothonotary's Office is directed to remove this case from the A25-22 argument list, which is set for November 2, 2022.