J-S07016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.W., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.W., MOTHER | : | No. 2844 EDA 2019 |

Appeal from the Order Entered September 11, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000616-2016

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                              Filed March 16, 2020

Appellant, C.W. ("Mother"), appeals from the order entered in the Philadelphia County Court of Common Pleas, continuing the placement of B.W. ("Child") and temporarily suspending Mother's visitation with Child.  We affirm.

The relevant facts and procedural history of this appeal are as follows. Child has a history of assaultive behavior and suicidal threats.  On March 23, 2016, the court adjudicated Child dependent and ordered placement at a psychiatric hospital.  DHS attempted to reunite Mother and Child over the next several years, but Child's severe mental health and behavioral issues required additional placements at psychiatric hospitals and a residential treatment

_____

[*] Retired Senior Judge assigned to the Superior Court.

facility ("RTF").

On September 11, 2019, the court conducted its most recent permanency review hearing. Precious Randall, a case worker from the Community Umbrella Agency ("CUA"), testified that DHS had attempted to place Child in foster care, but Child threatened to kill the foster parent. (N.T. Hearing, 9/11/19, at 4). Child subsequently moved to a behavioral health center, and her psychiatrist recommended further treatment at a RTF. (***Id.*** at 5). Ms. Randall also testified that Mother had agreed to make scheduled, supervised visits with Child beginning in May 2019, after Child was discharged from a psychiatric facility. (***Id.*** at 6). Mother failed to attend any of the scheduled visits, which caused Child to act out in a violent manner. (***Id.*** at 6-7).

At the conclusion of the hearing, the court found continued placement of Child was necessary, and it suspended Mother's visits. The placement goal remained for Child to be returned to Mother, and the court scheduled another permanency review hearing for November 13, 2019. On October 9, 2019, Mother filed a notice of appeal and Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.

Mother now raises three issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT TERMINATED MOTHER'S VISITS WHEN THERE WAS NO EVIDENCE PRESENTED TO SUPPORT THE FINDING THAT MOTHER POSED A GRAVE THREAT TO THE CHILD?
>
> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION

WHEN IT TERMINATED MOTHER'S VISITS WHEN IT DID NOT MAKE A PROPER FINDING THAT MOTHER POSED A GRAVE THREAT TO THE CHILD?

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT TERMINATED MOTHER'S VISITS WHEN THERE EXISTED A PRACTICABLE ALTERNATIVE TO VISITATION, EITHER MAKE A REDUCTION IN THE SUPERVISED VISITS OR THERAPEUTIC VISITS COULD HAVE BEEN ORDERED?

(Mother's Brief at 3-4).

Preliminarily, an appeal to this Court may be taken from: "(1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313." *Interest of J.M.*, 219 A.3d 645, 650 (Pa.Super. 2019) (internal footnote omitted). Where an order prohibits a parent from visiting a dependent child, and it is unclear when visitation may resume, the order qualifies as a collateral order. *See Interest of L.B.*, 2020 PA Super 41 (filed Feb. 19, 2020).

Here, the court entered a permanency review order suspending Mother's visitation with Child for an indefinite period. Based on this Court's recent decision in *Interest of L.B.*, we conclude that Mother has properly appealed from a collateral order. *See Interest of L.B., supra* (holding order completely denying visitation was collateral, because right to visitation is too important to be denied review, and right is irreparably lost if review is postponed). *See also In re J.S.C.*, 851 A.2d 189, 191 (Pa.Super. 2004) (stating order abridging parent's right to visitation is separable and collateral

to dependency action, because it does not require analysis of merits of underlying case). *Compare Interest of J.M., supra* (explaining order prohibiting visits at mother's home if mother or children tested positive for drugs was not immediately appealable; order did not eliminate contact altogether and could be revisited; moreover, mother did not seek permission to appeal, and order was not appealable as of right). Therefore, we proceed to address the merits of Mother's claims.

On appeal, Mother acknowledges that Child has serious mental health issues, including attention deficit hyperactivity disorder, oppositional defiant disorder, and bipolar disorder. Mother argues that, despite these diagnoses, the court suspended Mother's visits without consulting Child's mental health providers. Absent any input from these mental health professionals, Mother contends the court lacked credible evidence to support the finding that visitation posed a "grave threat" to Child.

To the extent the court relied upon Ms. Randall's testimony that Mother failed to attend scheduled visits, Mother insists she could not appear due to her work schedule. Mother also emphasizes that Child moved four times between May 2019 and August 2019. Further, Mother claims the court could have stopped short of imposing a complete suspension of visitation by reducing the number of visits or reinstating "therapeutic" visits at Child's RTF. Based upon the foregoing, Mother concludes this Court must reverse the order suspending visitation. We disagree.

The relevant scope and standard of review in dependency cases is as follows:

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*Interest of D.M.D.-C.*, 217 A.3d 279, 283-84 (Pa.Super. 2019) (quoting *In re W.M.*, 41 A.3d 618, 622 (Pa.Super. 2012)).

At each permanency review hearing, the court must consider "whether the visitation schedule for the child with the child's guardian is adequate, unless a finding is made that visitation is contrary to the safety or well-being of the child." Pa.R.J.C.P. 1608(D)(1)(q).

> The standard against which visitation is measured … depends upon the goal mandated in the family service plan. Where … reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat. If … the goal is no longer reunification of the family, then visitation may be limited or denied if it is in the best interests of the child or children.
>
> The grave threat standard is met when the evidence clearly shows that a parent is unfit to associate with his or her children; the parent can then be denied the right to see them. This standard is satisfied when the parent

- 5 -

demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

*In re C.B.*, 861 A.2d 287, 293-94 (Pa.Super. 2004) (internal citations and quotation marks omitted).

Moreover, clear and convincing evidence must support the court's determination:

> In reviewing a trial court's denial of visitation, [this Court] look[s] to whether there exists clear and convincing evidence that visitation would present a grave threat to the child. When making this determination, we must take into consideration the express legislative policy of preservation of the family. Therefore, the trial court is required to consider options such as structured visitation with the aid of an agency; only where there are no practicable visitation options can visitation be denied.

*Interest of L.B., supra* at 9 (quoting *In Interest of Coast*, 561 A.2d 762, 772 (Pa.Super. 1989)).

Instantly, the court relied on testimony from the CUA case worker in determining that Mother posed a grave threat to Child:

> Child's behavior continues to be violent … and she has had suicidal thoughts and actions. Visits by Mother, in family therapeutic sessions or otherwise, or Mother's "no shows" and lack of visits have posed a grave threat to this child's mental health, safety, and welfare. [The trial court gave] great weight … to the testimony of the Case Worker and the totality of the circumstances surrounding this case. Mother has demonstrated a severe mental or moral deficiency with a history of using violent physical discipline and degrading, abusive language with this child ….
>
> Ms. Randall further testified that when she first got this case, … Child did not want to have visits with … Mother. Belmont[, the psychiatric hospital where Child received inpatient care,] offered Mother therapeutic visits with …

- 6 -

Child, and although she was not present during those [three] or [four] visits, Ms. Randall received email reports from Belmont regarding those visits. The reports indicated … Child became physically aggressive with … Mother during the visits.

The current permanent placement goal is reunification in this case, therefore the "grave threat" standard applies, and Mother's visits, or lack thereof, do pose a grave threat to … Child.

(Trial Court Opinion, filed November 6, 2019, at 20-21).

The court also addressed Mother's argument regarding alternatives to a complete suspension of visitation, noting that it had "made various attempts to structure visitation, in many forms, between Mother and … Child." (**Id.** at 21). These attempts included: 1) receiving a therapist's recommendation regarding contact between Mother and Child; 2) therapeutic visits; 3) visits in accordance with the policies of Child's RTF; and 4) supervised visits at Child's foster home. (**Id.** at 21-22). Although the court is not averse to implementing practicable alternatives to visitation, it concluded that Child's mental health must stabilize before Mother can continue her involvement in Child's life.

Here, the record contains clear and convincing evidence to support the court's temporary[1] suspension of visitation. **See Interest of L.B., supra**; **Interest of D.M.D.-C., supra**. We emphasize Ms. Randall's undisputed testimony that Mother's failure to appear for visits resulted in Child "punching

---

[1] Significantly, the court noted it would develop "the plan for reintroduction of visitation with Mother" at the next scheduled hearing. (Trial Court Opinion at 16).

the walls, cursing, [and] attacking people physically," which forced staff to restrain Child.   (N.T. Hearing at 7).   Accordingly, we affirm the order continuing Child's placement and temporarily suspending  visitation.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/20