J-A07017-26

2026 PA Super 72

| | | |
|---|---|---|
| IN THE INTEREST OF: N.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: YORK COUNTY | : | |
| CHILDREN AND YOUTH SERVICES | : | |
| AGENCY | : | |
| | : | |
| | : | |
| | : | No. 1631 MDA 2025 |

Appeal from the Order Entered November 7, 2025
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000216-2018

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

OPINION BY DUBOW, J.:                                    **FILED: APRIL 10, 2026**

Appellant York County Children and Youth Services Agency ("CYS"), joined by N.L.'s guardian *ad litem* ("GAL"), appeals from the November 7, 2025 order entered in the York County Court of Common Pleas in which the juvenile court denied Appellant's request to terminate court supervision for N.L. when N.L. became 21 years old and ordered CYS to pay for N.L.'s new placement until N.L.'s legal guardian, Robert Stump, secured social security benefits for N.L.[1]  CYS argues that the juvenile court did not have jurisdiction to continue N.L.'s dependency following his 21st birthday because CYS had "developed" an appropriate transition plan.  The trial court disagreed, finding

_____

[1] While an order continuing a child's goal and placement is not final or appealable, this order is appealable because it concerns the continuation of court supervision of a child adjudicated dependent. after a dependent's 21st birthday.  **See Int. of R.P.**, 344 A.3d 783, 793 (Pa. Super. 2025) (addressing the issue of continuing juvenile court jurisdiction after dependent's 21st birthday).

that although CYS had "developed" a transition plan, Mr. Stump had not properly applied for social security benefits to pay for the plan and thus, N.L. did not have an acceptable transition plan. After careful review, we affirm.

The relevant facts and procedural history are as follows. On June 18, 2018, the juvenile court adjudicated N.L. dependent due to concerns about his mother's lack of supervision and inability to manage his special needs.[2] The court placed N.L. at The Woods, a residential treatment facility focused on lower functioning children and adults with autism.

On June 24, 2022, when N.L. was almost 18 years old, the court held a hearing and approved a transition plan for N.L. that contemplated a transition to an adult residential facility when N.L. turned 21. The juvenile court requested that the Orphans' Court appoint a legal guardian for N.L's estate due to N.L.'s limited ability to address the paperwork necessary for continued placement and social security benefits. The Orphans' Court appointed Mr. Stump as N.L.'s legal guardian.

The juvenile court continued to approve the transition plan at subsequent permanency review hearings, but identified difficulties in the transition, including "complex paperwork and difficulties with waiting lists and requirements for the limited adult residential facilities" as well as "a lack of communication with the guardian appointed by the Orphans' Court." Juvenile Ct. Op., 12/16/25, at 3.

---

[2] N.L. is non-verbal autistic and intellectually challenged.

On June 23, 2025, during a permanency review hearing, the juvenile court learned that "no one had ever applied for [N.L.'s] social security benefits," "which would be necessary [to] determin[e] funding for implementing the transition plan[.]" *Id.* The juvenile court referred the case to the Orphans' Court in order to review whether Mr. Stump was meeting the needs of the child. The Orphans' Court found that Mr. Stump was "properly managing [N.L.'s] placement" but acknowledged that N.L. did not have any finances and had not yet obtained social security benefits.[3] Orphans' Ct. Order, 8/13/25, at 2.

On September 19, 2025, a few months before N.L. turned 21, N.L. transitioned to adult placement at a group home through Community Options. Mr. Stump, however, had not yet obtained social security benefits for N.L., so there were no funds to pay the facility.

On November 6, 2025, four days before N.L.'s 21st birthday, the juvenile court held a status review hearing. A Community Options program specialist testified that it had been "challenging getting in regular contact with [] N.L.'s

_____

[3] Although Orphans' Court found that Mr. Stump properly managed N.L.'s estate, we question this conclusion in light of the fact that Mr. Stump was generally unresponsive to those assisting N.L. and, more importantly, had not even started the process of applying for social security benefits a few months before N.L. turned 21. Although the Orphans' Court's finding is not before us, we emphasize that if Mr. Stump remains as the guardian of N.L.'s estate, the Orphans' Court has the responsibility to oversee Mr. Stump's stewardship regularly to ensure that he is meeting his obligations and if not, appoint a new guardian for N.L.'s estate.

legal guardian," that the facility was "still waiting for N.L.'s awards letter to be kicked in with his social security benefit[,]" and that "since N.L.'s moving in in September, [] room and board payment ha[d] not been submitted[.]" N.T. Hr'g, 11/6/25, at 10-11.

The court ordered CYS to fund the transition plan because there were no social security benefits in place. Because of its concern regarding N.L.'s lack of funding for his transition plan, the court, relying on **Interest of R.P.**, 344 A.3d 783, 790 (Pa. Super. 2025), declined to terminate jurisdiction and scheduled an expedited review hearing for February 2026. This timely appeal followed. CYS and the juvenile court complied with Pa.R.A.P. 1925.

On appeal, CYS raises the following issue for our review: "The [juvenile] court erred as a matter of law and abused its discretion by extending juvenile court jurisdiction in N.L.'s dependency case after his 21st birthday based on its reliance on [] **Int[erest] of R.P.**" CYS's Br. at 7.

"Generally, the standard of review in dependency cases is for an abuse of discretion insofar as the appellate court must accept the [lower] court's findings of fact and credibility determinations if supported by the record, but need not accept the court's inferences or conclusions of law." **Int. of R.P.**, 344 A.3d at 787. To the extent the instant case involves questions pertaining to standing and jurisdiction, our standard of review is *de novo*, and our scope of review is plenary. **See In re Adoption of A.M.W.**, 289 A.3d 109, 116 (Pa. Super. 2023); **Int. of J.M.**, 219 A.3d 645, 650 (Pa. Super. 2019).

- 4 -

Here, N.L. is now over the age of 21 and no longer falls within the Juvenile Act's technical definition of a "child." ***See*** 42 Pa.C.S. § 6302 (indicating that "child" is individual who is under the age of 21 and meets certain criteria). However, this Court recently held that "nothing in Section 6302 suggests that a [juvenile] court in a dependency proceeding is automatically and irrevocably stripped of jurisdiction as soon as the subject individual turns twenty-one years old." ***Int. of R.P.***, 344 A.3d at 790.

This case implicates Rule 1631(e), which governs the requirements for termination of court supervision for individuals over the age of 18. Pa.R.J.C.P. 1631(e). "In pertinent part, [CYS] must prepare and file a transition plan incorporating the decision-making and input of the subject person." ***Int. of R.P.***, 344 A.3d at 791 (citing Pa.R.J.C.P. 1631(e)(2)). The transition plan must include the following:

> The transition plan must, at a minimum, address and document several vital considerations concerning the dependent's transition into self-sustained life by virtue of the end of the individual's court supervision, including, *inter alia*: (1) specific housing plans following discharge from dependency; (2) a description of any income sources; (3) specific plans for educational and vocational goals; (4) employment goals and status; (5) a description of the individual's continued medical and behavioral health needs; and (6) a description of any other needed support services.

***Id.*** (citing Pa.R.J.C.P. 1631(e)(2)(i)-(v), (viii)).

"Thereafter, the court is required to 'review the transition plan' and ensure that [CYS] has satisfied these requirements." ***Id.*** (citing Pa.R.J.C.P. 1631(e)(3)). In ***Interest of R.P.***, we determined that, even if the dependent turns 21, the juvenile court "cannot terminate its supervision without

approving an appropriate transition plan" and "can only discharge the person from its supervision after all of the above listed requirements have been met." *Id.* (citing Pa.R.J.C.P. 1631(e)(4), (f)) (internal quotation marks omitted); *see also id.* at 793 (court erred in terminating jurisdiction where "the record indicat[ed] that significant questions remained at the time of discharge regarding [the 21-year-old's] future housing, income, education, employment, health needs, and support services").

CYS argues that Superior Court's analysis in *Interest of R.P.* does not apply to these facts because the juvenile court in this case finalized N.L.'s transition plan while the juvenile court in *Interest of R.P.* had not "finalized or ratified" R.P's transition plan. CYS's Br. at 8. As a result, this Court, in *Interest of R.P.*, remanded the appeal "with instructions that dependency jurisdiction could be terminated once an appropriate transition plan was approved." *Id.*

In contrast, the juvenile court found that the analysis in *Interest of R.P.* applied to this case. Juvenile Ct. Op. at 4. The juvenile court emphasized that further court supervision was required to ensure feasible permanent placement for N.L. because "as of June 2025, no one could respond to questions regarding [N.L.]'s social security benefits" and "until such time as [the benefits] begin, [N.L.] does not have a source of income necessary to terminate jurisdiction." *Id.* at 5, 7. Further, the court explained that:

> [The transition plan] must have "a description of the child's sources of income." [Pa.R.J.C.P. 1631(e)(2)(ii).] Without the source of income **being** in place, not maybe possibly might be in

place at some point in the future[, t]he transition plan is not complete. In this specific case, at the time of the last hearing, the representative from the residential placement for the youth raised the following concerns: 1) Behavioral issues related to transitioning to the placement; 2) A monthly payment for room and board for $712.15 per month[;] . . . and 3) Payment for clothing, laptop needed for communication and other miscellaneous expenses.

*Id.* at 7 (emphasis in original).

We wholeheartedly agree with the juvenile court's analysis, commend the juvenile court's stewardship over this matter, and conclude that it did not abuse its discretion by continuing to assert jurisdiction over N.L. to ensure that N.L.'s transition plan was properly funded. Although CYS argues that the juvenile court erred in maintaining jurisdiction because the juvenile court "approved" the transition plan, this argument is disingenuous. The juvenile court's approval is meaningless if funding is not in place to support the transition plan. The record is clear that at the time of the November hearing, Mr. Stump, who had only started the application process a few months earlier, had not secured social security benefits for N.L. and was unresponsive to calls from his placement.[4] With the lack of funding and an unresponsive guardian for N.L.'s estate, the juvenile court properly extended its jurisdiction to oversee that N.L.'s transition plan is properly funded. If the juvenile court had not maintained jurisdiction, it is uncertain that Mr. Stump would meet his

_____

[4] Even CYS admits that "[m]inimal efforts were made by [Mr. Stump] to secure any entitlement to social security benefits [] until August 2025 when [Mr. Stump] was brought before the judge of the Orphans' Court to determine whether or not he was adequately serving N.L." CYS's Br. at 9, n. 1.

obligations as the guardian of N.L.'s estate and ensure that N.L.'s transition plan was fully funded.[5]

We, therefore, affirm the court's November 7, 2025 order.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2026

---

[5] We note that on March 18, 2026, the trial court provided a supplemental record indicating that Mr. Stump had filed the necessary paperwork for social security benefits and the social security agency was funding N.L.'s transition costs. On March 4, 2026, the juvenile court, thus, accepted CYS's transition plan and terminated its supervision of N.L. We, however, will not dismiss this appeal on the grounds of mootness because the jurisdictional issue is "capable of repetition and apt to elude appellate review." **In re R.D.**, 44 A.3d 657, 680 (Pa. Super. 2012). Furthermore, based on our review of the supplemental record, we share the juvenile court's outrage that CYS had not issued any payment to Community Options despite the November 7, 2025, order requiring CYS to fund N.L.'s transition plan until social security benefits were activated. We, however, leave it to the juvenile court to impose any sanctions it deems necessary.